[No. 18440.    Department Two.—July 2, 1895.]

MILTON MORSE ET AL., RESPONDENTS, v. MATTHEW L. DE ARDO ET AL., APPELLANTS.

MECHANIC'S LIEN—MINING CLAIM—LAND HELD UNDER AGRICULTURAL PATENT.—Under section 1183 of the Code of Civil Procedure, giving a lien to persons who perform labor on any "mining claim," land held under an agricultural patent from the United States is not subject to a lien for the wages of laborers employed in working a mine upon it. Such land is not a "mining claim" within the meaning of the section.

APPEAL from a judgment of the Superior Court of Tuolumne County.

The facts are stated in the opinion of the court.

*F. W. Street*, for Appellants.

*F. P. Otis*, for Respondents.

HENSHAW, J.—Appeal from the judgment.

The action is to foreclose a lien upon defendants' property for labor performed upon a mine situated thereon.

Defendant De Ardo was the owner under patent from the United States for agricultural lands of a farm containing about one hundred and sixty acres. He had sunk a shaft upon his land and discovered a bed of auriferous gravel. He had then bonded his land to his codefendant, Howes, with privilege to Howes of working the gravel deposit and developing the mine. Howes engaged plaintiffs in and about this work, and, having failed to pay them, they seek by this action to enforce

a lien upon the land as a mining claim under section 1183 of the Code of Civil Procedure.

The single question presented by this appeal is whether land held under agricultural patent may be subjected to a lien for the wages of laborers employed in working a mine upon it.

The constitution, article XX, section 15, in securing liens to mechanics and others for the value of their labor, has left to the legislature the duty of providing for the enforcement of these liens. In performance of this duty the legislature has enacted that "every person who performs labor upon any mining claim has a lien upon the same," etc. (Code Civ. Proc., sec. 1183.)

At the time of the passage of this section the term "mining claim" had been used in statutes, and had a well-defined meaning which had attached to it, not only by popular acceptance, but by the countenance and authority of judicial decisions. "What, then, is a mining claim?" asks the court in *Mt. Diablo etc. Co.* v. *Callison*, 5 Saw. 439, and, answering its own interrogatory, declares: "A 'mining claim' is the name given to that portion of the public mineral lands which the miner, for mining purposes, takes up and holds in accordance with mining law."

In *Helm* v. *Chapman*, 66 Cal. 291, work had been done in the stopes and levels of a mine on a mining claim, and a lien was sought to be enforced for the value thereof. This court said: "Section 1183 does not, it is true, provide for liens upon mines, but upon 'mining claims.' The lien, if it exists, extends to the whole claim."

In *Williams* v. *Santa Clara Min. Assn.*, 66 Cal. 193, the question came squarely before the court, and is thus treated:

"But if it be conceded that one who works upon or in a mining claim may secure a lien for the value of his labor on the whole claim, the court below did not find that plaintiff or his assignors 'bestowed labor' upon a *mining claim*. A 'mining claim,' as the term is used

in the statutes of the United States, is that portion of a vein or lode and of the adjoining surface, or of the surface and subjacent material, to which a claimant has acquired the right of possession by virtue of a compliance with the laws of the United States and the local rules and customs of miners. (Copp's United States Mining Decisions, 136, 142; Weeks on Mineral Lands, 118.) Independent of acts of Congress providing a mode for the acquisition of title to the mineral lands of the United States, the term 'mining claim' has always been applied to a portion of *such* lands to which the right of exclusive possession and enjoyment by a private person or persons has been asserted by actual occupation, or by compliance with local mining laws or rules or customs.

"In the case now here the court below found that the defendant, the Santa Clara company, was the owner of two tracts of land, one being a portion of the *Rancho Los Capitancillos*, and consisting of eleven hundred and nine and sixty-seven one hundredths acres (the title whereto was derived through a patent from the United States), and the other containing three hundred and fourteen and sixty-eight one hundredths acres, being pueblo tract No. 2, formerly belonging to the city of San Jose. The court also found that 'the whole of said land is *commonly known* as the *Guadaloupe mine*'; and then proceeded to declare a lien in favor of plaintiff upon both tracts, and to decree that the fourteen hundred and twenty-four and fifty-five one hundredths acres should be sold to satisfy it.

"The lands directed to be sold were not a 'mining claim,' either in the popular sense of the words, or as the term has been employed in judicial decisions, or as it is used in the code. The Fremont grant is not a 'mining claim,' although many mines have been opened within its boundaries, and the owners of the grant may claim such mines to be their own. The right of the defendant, the Santa Clara company, to a portion of the *Rancho Los Capitancillos*, or to a portion of the

*pueblo* lands of San Jose, and to extract ores therefrom, in no way depended upon a claim to the possession made in recognition of and in conformity to local rules adopted by miners in a mining district, or in accordance with the usages or customs of a locality. The defendant derived its title, as would seem, from the Mexican or Spanish government to the larger tract; certainly so as to the *pueblo* land. We take notice that no patent, based upon 'mining claims,' could have been issued under any act of Congress for the whole or for eleven hundred and nine acres of the *Rancho Los Capitancillos.* The plaintiff could not acquire the statutory lien upon the lands of the Santa Clara company, simply because the statute does not authorize it. It may be that the statute is not sufficiently comprehensive; indeed, it would, perhaps, be difficult to say why one class of 'materialmen,' or laborers, should have preference over another; why, for instance, the furnisher of seed, or the plowman, should not have a lien on the farm of him to whom the seed is supplied, or for whom the plowing is done. But the legislature has seen fit to limit the benefit of the lien to particular classes, and we are not authorized to extend it to others."

In *Bewick* v. *Muir*, 83 Cal. 372, which respondent contends modifies and explains the law declared in *Williams* v. *Santa Clara Min. Assn., supra,* this court was called upon to decide whether the phrase " mining claim" of the lien law included mining claims after the possessory right or claim had matured into a perfect title by the issuance of a mineral patent from the United States; and this was all it was called upon to decide. This court said: " The words 'mining claim,' as used in the law, have no reference to the different stages in the acquisition of the government title. In our opinion it includes all mines, whether the title is inchoate, as in the case of a mining claim in its strict sense, or perfect, as in the case of a fee-simple title." Reference to the record in this last-named case discloses not only that the complaint pleaded that all the mining land and ground

described therein were mining claims, but that the court in its findings so declared. In the case at bar there is no such finding.

It follows, therefore, that the further expressions of the court in *Bewick* v. *Muir, supra,* were not only unnecessary to the decision, but were addressed to a condition neither involved in nor presented by the facts of the case. It is the invariable rule, well understood by the profession, that an opinion of this court becomes authority only upon the point decided, and that *obiter dicta* are of no binding force or effect. Indeed, such passing declarations have no weight whatever, except such as the cogency of the reasoning may entitle them to.

We must turn, therefore, to *Williams* v. *Santa Clara Min. Co., supra,* as containing the last authoritative expression of the court upon the question, and we deem its reasoning to be unassailable and its conclusion determinative of the case at bar.

As is there said, the legislature has seen fit to limit the benefit of the lien to particular classes, and we are not at liberty to extend it to others. To do so would not be construction, but judicial legislation.

The judgment appealed from is reversed, and the cause remanded.

McFARLAND, J., and TEMPLE, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.