(December 8, 1900.)
## SALISBURY v. LANE, ASSESSOR.
[63 Pac. 383.]

ASSESSMENT OF MINES.—Mines and mineral lands, the title to which is in the private owner or claimant, and not in the United States government, are, under the revenue laws of Idaho, subject to assessment for taxation.

REVENUE STATUTES ARE TO BE LIBERALLY CONSTRUED.—Revenue statutes are to be liberally construed under section 4, of the Revised

Statutes of Idaho, so as to effect the object of such statutes and promote justice, while exceptions contained in such statutes are to be strictly construed.

STATUTORY CONSTRUCTION—TAXATION.—A construction of a statute to raise revenue which extends the terms of a proviso therein contained making exceptions, so as to exclude from taxation a large proportion of property in the state, and which is owned and held by private persons for their individual benefit, the title thereto not being in the United States government, tends to defeat the object of such statute (raising revenue), and does not promote justice, and, therefore, violates the provisions of section 4 of the Revised Statutes, which provides that "statutes must be liberally construed, with a view to effect their objects and to promote justice."

SAME—JUDICIAL CONSTRUCTION.—It is the policy of the revenue laws of Idaho to tax all private property the title to which is not in the United States government, and this policy should not be abridged by judicial construction.

EXEMPTIONS FROM TAXATION.—Courts should not, by technical or strained construction, extend the exemptions of property from taxation.

SAME.—To exempt certain private property from taxation under a statute making all private property taxable, the exemption must be in terms so specific and certain as to admit of no doubt.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

W. E. Borah, for Appellant.

We call attention in the first instance to the well-established rule, so strictly enforced by all courts, that in order that property be exempt from taxation, the terms of exemption must be clear and positive. There must be no doubt, for if there is a doubt about the intention to exempt the property, then it will be held that the property is subject to taxation. (*Thurston Co. v. Sisters' House of Providence*, 14 Wash. 264, 44 Pac. 252; *People v. Commissioners*, 76 N. Y. 73; *People v. Davenport*, 91 N. Y. 586; Cooley on Taxation, 2d ed., 204, 205; 1 Desty on Taxation, 108; *Judge v. Spencer*, 15 Utah, 242, 48 Pac. 1097; *Providence Bank v. Billings*, 4 Pet. 514; *Railroad Co. v. Maryland*, 10 How. (U. S.) 376.) The omission of the taxing officers of the state in previous years

assess this property cannot control the duty imposed by law upon their successors, or the power of the legislature, or the legal construction of the statute under which the exemption is claimed. (*Railroad Co. v. Dennis,* 116 U. S. 665, 6 Sup. Ct. Rep. 625.) The words "mining grounds" and "mining claims" are practically synonymous, and the supreme court of Nevada, in commenting on the phrase "mining ground," says: "They refer to that interest which the mere occupant of a mine has in the same. They are not the words used when a fee simple or leasehold interest in real estate is to be conveyed." (*Hale Co. v. Storey,* 1 Nev. 104; *Atkwood v. Fricot,* 17 Cal. 38, 76 Am. Dec. 567; *Mt. Diablo v. Callison,* 5 Saw. 439, 1 Fed. Cas. No. 9886, 9 Morr. Min. Rep. 616.) There is nothing in the exceptions to justify the claim that mines to which patents have been issued should not be subject to taxation. (*Waller v. Hughes,* (Ariz.), 11 Pac. 122.)

R. Z. Johnson and R. H. Johnson, for Respondent.

Statute law is the will of the legislature, and the object of all judicial interpretation of statutes is to determine what intention is conveyed, whether expressly or by implication, by the language used. (23 Ency. of Law, 297.) The great object of maxims of interpretation is to discover the true intention of the law; and whenever that intention can be indubitably ascertained, and is not a violation of constitutional right, the courts are bound to obey it, whatever may be their opinion of its wisdom or policy. (1 Kent's Commentaries, 468; Lieber s Legal Hermeneutics, 88.) That the policy of our legislature was to exempt all mining claims, whether patented or unpatented, is shown by the fact that, at the time this provision was re-enacted at the Second Session, California had excepted all mines that had become private property, from the above clause. Mr. Lindley, a gentleman of long and diversified experience in the mining regions and in mining practice, says: "The words 'mining claim' have no reference to the different stages in the acquisition of the government title. . . . include all mines, whether patented or not patented, if

acquired under the mining laws." (1 Lindley on Mines, sec. 327; *Idaho Gold Min. Co. v. Winchell,* 6 Idaho, 729, 59 Pac. 533.) A word repeatedly used in a statute will bear the same meaning throughout the instrument, unless it is apparent that another meaning is intended. (See, also, Sutherland on Statutory Construction, sec. 255, and cases cited; *Uhe v. Chicago etc. Ry. Co.,* 4 S. Dak. 505, 57 N. W. 484-488.) Where a word is used in different places in a statute and its meaning in one instance is clear, it must be given the same meaning elsewhere, unless it clearly appears that a different meaning was intended. (*Postal Tel. Cable Co. v. Farmville etc. Co.,* 96 Va. 661, 32 S. E. 468; *Postal Tel. Cable Co. v. Norfolk etc. R. Co.,* 88 Va. 920, 14 S. E. 805.)

HUSTON, C. J.—This is a submission of a controversy without action. It is unnecessary to set forth the entire stipulation of facts, as shown by the transcript. The question submitted to the court upon this agreed case is as follows: "Were mining claims, for which United States patents had been issued, exempt from taxation in 1898 when the mining claims hereinbefore mentioned were assessed?" This submission involves simply the construction of subdivision 7, section 1401, of the Revised Statutes. Said section provides that "the following property is exempt from taxation:  . . . . Seventh. Mining claims, but machinery, property and improvements upon or appurtenant to mining claims shall not be so exempt." The tenth subdivision of said section includes "possessory rights to public lands." It is not, as we consider it, necessary to enter into a philological discussion of the origin or general meaning of the term "mining claim." What does the term mean as used in the statute under consideration? The organic act of the territory of Idaho contains a provision similar, if not exact, with that of most of the territories. Section 1851 of the Revised Statutes of United States, provides: "The legislative power of every territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States. But no law shall be passed interfer-

ing with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of nonresident be taxed higher than the lands or other property of residents." Primarily, the title to all lands in this country is in the government, and until the government has parted with the title it remains "the property of the United States," and as such is not subject to taxation. And it was in recognition of this law that the first legislature of the territory exempted "mining claims"—i. e., claims asserted under the mining laws of the United States, to certain lands of the government supposed to contain mineral deposits. These claims might, by compliance with the provisions of the United States laws, ripen into a title, at the option of the locator or claimant; but, so long as the title remained in the government they were exempt from taxation by the territory or the state. When, however, the title passed from the government by the issue of patent, they were no longer within the purview of the provisions of the federal law. They were no longer the property of the United States, but became incorporated into the general property of the citizen or citizens of the territory or state, and were a part of "all property . . . . subject to taxation," under the provisions of section 1400 of the Revised Statutes, unless exempted by the express provisions of some statute of the state. The claim, which was an inchoate right had by the acts of the claimant, confirmed by grant of the government, ripened into complete title. The title of the holder of mining property under a patent from the United States government is in no way different from the · title by patent to any other lands granted by the United States. " 'Twas mine; 'tis thine." By virtue of the paramount law, while it was the property of the United States it was exempt from taxation by the local law. When it passed from the United States to the citizen, it became subject to the same general law as that of all other property of the citizen.

Section 1400 of the Revised Statutes, which is the existing law in this state, provides that "all property in this territory

[state] not exempt under the laws of the United States, except as enumerated in the next section, is subject to taxation as in this title provided; but nothing in this title shall be construed to require or permit double taxation." The seventh subdivision of section 1401 is as follows (after defining exemptions) : "Seventh. Mining claims, but machinery, property and improvements upon or appurtenant to mining claims shall not be so exempt." Is not the intention of the legislature clearly apparent in the language of this section? All property which the legislature was authorized to tax they would tax, in obedience to the recognized principle that taxation should, so far as practicable, be equal. The mining industry was the dominant industry of the territory, and yet it is contended that it was the intention of the legislature to exempt it from taxation. If this is a correct theory of taxation, it would be entirely proper for our next legislature to exempt sheep from taxation, because the sheep industry has become dominant in this state. We are not in accord with the position taken by counsel for respondent that, in construing statutes *in pari materia,* we must follow the word, and not the purpose, of the law. All statutes pertaining to revenue are to be construed most strictly in favor of the object of the statute; that is, in favor of the purpose of the statute. Statutes of exemption are to be strictly construed against exemption and in favor of revenue. Statutes providing for liens are to be construed in favor of the purpose of the statute; that is, to secure to the lienholder or claimant the right intended by the statute to be secured to him. If it was the intention of the legislature to exempt from taxation the most valuable property in the state, such intention should have been clearly and unequivocally expressed in the statute, and, not being so expressed, we cannot think that the courts would be justified in reaching so inequitable a conclusion by construction.

The constitution of Nevada (article 10) prescribes the taxation of "all property, real, personal, and possessory, excepting mines and mining claims, the proceeds of which alone shall be taxed." It is evident that the makers of the consti-

tution of Nevada, as well as the people who adopted it, recognized a distinction between mining claims and mines. In *State v. Kruttschnitt,* 4 Nev. 178, the court says: "Whenever the interpretation of a statute or a constitution in a certain way will result in manifest injustice, courts will always scrutinize the statute or constitution closely, to see if it will not admit of some other interpretation." The formulators of the constitution of Idaho, with an experience of more than a quarter of a century before them, declined to follow Nevada, and provide by a provision in the fundamental law of the state for the exemption from taxation of what was known and recognized as among the most, if not the most, valuable property in the state, when the same had become a legitimate subject of taxation. Of course, so long as the title remains in the government, "mines and mining claims," like any other claim to land, are not the subject of local taxation; but when they cease to be property of the United States—when the fee has passed from the United States to the citizen—then they are, as all other property of the citizen is, subject to taxation, unless exempted by positive and unequivocal law. It is true that many of the richest producing mines in the country are held as "mining claims," the owners thereof electing, presumably for the very purpose of evading local taxation, to so hold them, rather than perfect title in themselves by securing patents thereto. But this is an option resulting from the policy of the federal law—a matter which we are not permitted to consider. Uniformity of taxation is an elementary principle, recognized by the constitution. "The legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory shall continue until changed by the legislature of the state." (Idaho Constitution, article 7, section 5.)

It will not do, in the consideration of this case, to place too much reliance upon the decisions in California and Nevada. The conditions are so very different. We have no law in this state subjecting the product of mines to taxation, and, if the

contention of respondent is to obtain, the result is that all mining property in the state escapes taxation, except the "machinery and improvements thereon," and this in the face of the fact, well known to all, that the heaviest burden of the expense of the state government comes from the mining counties, not only in the protection of property, but in the punishment of crime.

It is objected that many patented mines are nonproductive. So, also, is much other property in the state. But the law provides (Laws 1899, sec. 1, p. 215): "All taxable property must be assessed at its full cash value." If A owns one hundred and sixty acres of land, all of which is under improvement, and from which he is receiving a large yearly revenue, it is not presumable that B, who owns one hundred and sixty acres of sagebrush land adjoining him, none or but a very small part of which is under improvement, and from which B is receiving no revenue whatever, will be assessed at the same value as that of A. And it is presumable that the like rule will obtain in regard to mines, certainly if regard is had to the law. That the legislature has the absolute authority to exempt all mines and mining property from taxation is unquestioned, but such intention should be expressed in direct and unequivocal terms. Questions of such importance, involving such vital consequences to the state and to the people, ought not to be left to the fallibility of construction. The judgment of the district court is reversed, and cause remanded, with instructions to enter judgment in favor of the defendant dismissing the action, with costs of appeal to appellant.

QUARLES, J.—I concur in the views so ably expressed by Mr. Chief Justice Huston. The theory of the lower court and that urged here by counsel for respondent, in my opinion, overlooks well-established rules of construction in construing our revenue statutes. As suggested in the opinion formulated by Mr. Chief Justice Huston, the only question to be determined here is, What did the legislature intend to be understood by the use of the term "mining claims" in our revenue statutes? Title 10 of the Revised Statutes is entitled "Revenue." The

first chapter of that title is entitled "Property Liable to Taxation." The first section of the title aforesaid, and of the first chapter thereof, is section 1400, which is as follows: "All property in this territory [state] not exempt under the laws of the United States, except as enumerated in the next section, is subject to taxation as in this title provided; but nothing in this title shall be construed to require or permit double taxation." The following section (1401) is as follows: "The following property is exempt from taxation: 1. All property used exclusively for public schools and such as may belong to the United States, this territory or to any county or municipal corporation or school district within this territory. 2. Churches, chapels, and other buildings, with the lots of ground appurtenant thereto, and used therewith belonging to any church organization or society and used for religious worship, and from which no rent is derived; with their furniture and equipments; also public cemeteries. 3. Buildings or parts of buildings owned and used by the order of Masons or Odd Fellows or by any other benevolent or charitable society exclusively for the purposes of their order, and their furniture and equipment. 4. The property of resident widows and orphan children, not to exceed the amount of $1,000 to any one family, when their total assessment is less than $5,000. 5. Growing crops. 6. Capital stock of corporations where the property of the corporation has been assessed. 7. Mining claims, but machinery, property and improvements upon or appurtenant to mining claims shall not be so exempt. 8. Public and private libraries. 9. Tools of a mechanic, farmer, miner or prospector and household furniture of a family or householder, not exceeding in value two hundred dollars. 10. Possessory rights to public lands." Section 1405, found in said title, and which is the third section thereof, is as follows: "Whenever the terms mentioned in this section are employed in this title, they are employed in the sense hereafter affixed to them: 1. The term 'property' includes moneys, credits, bonds, stocks, dues, franchises and all other matters and things, real, personal and mixed, capable of private ownership. 2.

The term 'real estate' includes: (1) The possession of, claim to, ownership of, or right to, the possession of land; (2) All mines, mineral and quarries in and under the land, and all rights and privileges appertaining thereto; (3) Improvements. 3. The term 'improvements' includes: (1) All buildings, structures, fixtures, fences and improvements erected upon or affixed to the land; (2) All fruit, nut-bearing or ornamental trees and vines not of natural growth. 4. The term 'personal property' includes everything which is the subject of ownership not included within the meaning of the term 'real estate.' 5. The terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent creditor. 6. The term 'credit' means those solvent debts, owing to the person, firm, corporation or association assessed. The term 'debts' means those liabilities owing by the person, firm, corporation or association assessed to *bona fide* residents of this territory, or firms, associations or corporations doing business therein."

Without specifying or enumerating the well-known rules of statutory construction which must be followed in deciding the question before us, I will make some general observations relative to the question here. Title 10, *supra,* is strictly speaking, a revenue statute. Its object and purpose is to raise revenue. Within the meaning of the various sections found in that title, the word "real estate" includes possessory claims to the public lands of the United States, whether those lands are mineral or nonmineral. It is so expressly declared. "All mines, minerals and quarries in and under the land" are real estate, in the language of the statute, and the same is "property," and so declared to be. What property is taxable? The statute says: "All property in this territory [state] not exempt under the laws of the United States, except as enumerated in the next section, is subject to taxation." Careful reading of the whole of title 10, and all amendatory acts relating thereto, shows, to my mind, that it was the intention of the legislature to tax all property in this state, except such as is used for public schools, and public property belonging to the

United States or this state or any political division thereof; such as belongs to, and is used by, churches and benevolent. societies solely for religious or benevolent purposes, and public cemeteries; such as is used by charitable institutions, Masons, and Odd Fellows, etc., exclusively for purposes of their order; property of resident widows and orphan children to the extent of $1,000, when their total assessment is less than $5,000; growing crops; capital stock of corporations, where the property of the corporation has been assessed; mining claims, libraries, and possessory rights to public lands. The legislature evidently intended to tax all private property except where otherwise specified in the statute. It certainly intended to tax all private real property which was used by the owner thereof for his own private purposes, the title being in himself. But it was certainly intended to exclude from assessment for taxation all real estate the title to which might be in the United States government. To my mind, in using the terms "mining claims" and possessory rights to public lands," the legislature intended to exempt both mining property and agricultural land the title to which was in the United States government.

The act of Congress quoted in the opinion of Mr. Chief Justice Huston prohibits the taxation of property belonging to the United States. The location of a mining claim under the laws of the United States, if properly made, makes the locator the owner of such mining claim as against all the world except the United States. To become the owner of such mining claim as against the United States, the locator must comply with the conditions required of him by the act of Congress by making $500 worth of improvements upon the mining claim, etc., and then apply for patent, and comply with all the regulations prescribed by law. When the locator does this, he is then entitled to, and receives, a patent for his mining claim, and becomes the private owner thereof against the government and all the world.

Keeping in mind the object and purpose of the statute under consideration—the raising of revenue—and keeping in

mind the policy of said statutes in taxing all private property used for the purposes of the private owner, and the policy of the statute exempting all property the title to which is in the United States, it is clear to my mind that by the term "mining claims," as used in said statute, only mining property, the title to which remains in the government, was intended to be exempted from taxation.

We are cited by counsel for respondent to a number of sections in the Revised Statutes where the term "mining claims" is used as illustrating the meaning of the term as used in the revenue statute. We are cited to section 4542 of the Revised Statutes, in this connection. That section authorizes the court or judge thereof to order a survey of "any real property or mining claim, including ledges thereof," which the claimant believes to be in the possession of another either by surface or underground holdings or workings, etc. To my mind, the term "mining claim," as used in that section, was not intended to include mining property the title to which was in the claimant; for, if the use of this term "mining claim" had been omitted entirely from said section, the language therein used would have authorized such survey upon a mining claim held subject to the paramount title of the United States.

We are referred by counsel for respondent to section 5125 of the Revised Statutes, relating to laborers' liens, where the expression, "who performs labor in any mining claim," is used as illustrative of the intent with which the term "mining claim" is used in our revenue law. But this section of the Revised Statutes was expressly repealed by the legislature in 1893, and a new statute upon this subject enacted, wherein this language is used by the legislature, "or performs labor in any mine or mining claim"; and by this new statute, even in our mechanic's lien law, it appears that the legislature had in view a distinction between mining property held by the private owner under title in himself and the mere location of mining property held subject to the paramount title of the United States government.

We are also referred to section 4 of the Revised Statutes, which provides that "the Revised Statutes establish the law of this [state] respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice." To my mind, counsel for respondent fail to apply the rule of construction established in this state by this statute as it was intended to be applied. The object of the statute under consideration is to raise revenue. In this connection, it is well to say that, by all rules of statutory construction, sections 1400 and 1401 of the Revised Statutes, must be regarded as one statute, of which section 1400 states the rule, and section 1401 states exceptions thereto. Counsel for respondent, in applying the rule of construction established by section 4, *supra,* applies that rule to section 1401, and not to section 1400, *supra.* In other words, the rule of liberal construction is applied by counsel for respondent, not to the rule of the statute, but to a proviso creating an exception to the rule enunciated in the statute. The rule of construction applied by counsel for respondent to the statute under consideration has a tendency to defeat the object of the statute (the raising of revenue), by enlarging, through interpretation or construction by the court, the exceptions to the rule taxing all property. The construction contended for by respondent does not "promote justice." More than that to my mind, it contravenes the policy of our revenue statutes. The legislature, in the enactment of the statutes in question, has shown no intention of adopting a policy which exempts the mining industry from its just proportion and share of the burdens of taxation. This is apparent from the fact that improvements upon possessory claims where the title is in the United States government, whether a "mining claim" or a possessory claim upon agricultural lands, are, by the provisions of said statutes, made taxable. If it was intended to favor the mining industry, why tax its improvements upon mining claims? A careful study of the statute makes it clear to my mind that the intention of the legislature was that

all real estate to which title is held by private parties, and used for individual purposes of the owner, should bear its proportion of taxation, whether mineral or nonmineral.

The rule is well established that in construing revenue statutes the exceptions thereto exempting property must be strictly construed. This rule does not conflict with, but carries out the intention of, section 4 of the Revised Statutes, cited *supra,* establishing the rule of liberal construction in this state. But the rule of construction contended for by the respondent violates these rules of construction, as it tends to defeat, to some extent, the raising of revenue, and, instead of promoting justice, promotes injustice. There is no justice nor reason in exempting mines owned by private individuals, and held or worked for their especial benefit, from taxation. I do not believe that the legislature intended so to do, and I am unwilling that this court shall, by construction, exempt a large proportion of the property in this state which is owned by private individuals, and held and operated for the benefit of such private owners, from taxation.

SULLIVAN, J.—I cannot concur in the conclusion reached by my associates. In the question submitted for decision herein the expression "mining claims" is used twice, and applied to patented mining land. The question is as follows: "Were mining claims for which United States patents had been issued exempt from taxation in 1898, when the mining claims hereinbefore mentioned were assessed?" The decision must turn upon the meaning of the term "mining claims" as used in section 1401 of the Revised Statutes. Counsel who prepared and submitted to this court the above-quoted question uses therein that term twice, and each time applies it to patented mining land. It is but proper to state here that Mr. Borah, who presented this case on the part of the respondent in this court, did not appear for him in the court below, and signed the stipulated facts on which appears the foregoing question. I am of the opinion that the legislature that enacted said section 1401 and other sections of our Revised Statutes, and the several legislatures that have amended and re-enacted said section, intended to and did apply said term to patented as well as unpatented mining claims. It is suggested in the opinion of Chief Justice Huston that it was

in recognition of the provisions of section 1851 of the Revised
Statutes of the United States, that mining claims the title to
which was in the United States were exempted from taxation
by the provision of said section 1401, as property belonging to
the United States was not subject to taxation.    On an examina-
tion of subdivision 1 of said section, it will be observed that all
property belonging to the United States is exempted from taxa-
tion by its provisions.    That being true, and unpatented mining
claims being property of the United States, and exempted from
taxation by the provisions of said subsection 1, why exempt the
same property the second time in the same section?    First, all
property belonging to the United States, and second, unpatented
mining claims, which are property belonging to the United
States, are exempted, according to the interpretation of my as-
sociates.    While tax exemption laws should not be extended to
property that was not intended to be exempted from taxa-
tion by the legislature, yet such laws ought to be so inter-
preted as to exempt all property that was intended to
be exempted.    Counsel for the respective parties in their
briefs have spent some time in discussing the proper construc-
tion and interpretation of exemption laws.    While techni-
cally there is a clear distinction between "construction" and "in-
terpretation," the real legislative intent or meaning should be
ascertained if possible.    "Interpretation differs from construc-
tion, in that the former is the art of finding out the true sense
of any form of words—that is, the sense which their author
intended to convey—and of enabling others to derive from them
the same idea which the author intended to convey."    (Cooley's
Constitutional Limitations, 6th ed., 51; 23 Am. & Eng. Ency.
of Law, 296.)    It is said, in the concurring opinion of Mr.
Justice Quarles, that the rule is well established that, in con-
struing revenue statutes, the provisions thereof exempting prop-
erty from taxation must be strictly construed, and that rule in
no wise conflicts with the rule of liberal construction established
by the provisions of section 4 of the Revised Statutes of Idaho.
That, to me, is a novel proposition.    Stated in another form,
it is that the rule of strict construction is not in conflict with
the rule of liberal construction, as contemplated by the provi-

sions of section 4. The learned judge holds that the rule construing exemptions in revenue statutes in this state is that exemption provisions must be strictly construed. The rule established by the provisions of said section 4 makes no distinction whatever in the application of the rule of liberal construction. The language of that section is as follows: "The Revised Statutes establish the law of this state respecting the subject to which they relate, and their provisions and all proceedings under them are to be liberally construed," etc. All of their provisions must be liberally construed, not a part of them.

My associates hold that provisions concerning exemptions from taxation must be strictly construed, thus holding that, where said section declares that the provisions of the Revised Statutes must be liberally construed, the expression "their provisions" only means a part of the provisions of the Revised Statutes, and not all of them. The object of said section 1401 was to exempt property from taxation, and that was to promote justice. It is stated that, if patented mining claims are exempted from taxation, great injustice would be done. Whether that be true or not, it is not the duty of this court to run a race of opinions with the legislative branch as to whether certain laws are just or unjust. The legislature is the sole judge of that question. It is proper to suppose that the legislature intended to and did promote justice by exempting certain property from taxation. Said section 1401 ought to be so interpreted as to include all property clearly intended by the law-making power to be exempted from taxation and no more.

Much has been said by counsel as to the meaning of the term "mining claims." Under the revenue laws of Arizona it is held that that term does not include patented mining ground; that a mining claim, after the patent of the United States is issued conveying it, then, under the laws of that territory, becomes "lands" or "real estate." (See *Waller v. Hughes* (Ariz.), 11 Pac. 122.) The statute of Arizona defining the words "land" and "real estate" is different from ours, and if it were not, that case would not be decisive of the one at bar. The supreme court of the United States in *Smelting Co. v. Kemp*, 104 U. S. 649, 26 L. ed. 875, defines a "mining claim" as a parcel of land con-

taining precious metal in its soil or rock. It is said in 1 Lindley on Mines, section 327: "The words 'mining claims' have no reference to the different stages in the acquisition of the government title. They include all mines, whether patented or not patented, if acquired under the mining laws." I am of the opinion that the several legislatures of this state who have used that term in laws enacted by them intended to and did include both patented and unpatented mineral land. We find that term used several times in our Revised Statutes. It is used in section 3300 in defining a mining partnership; in section 4542 in relation to obtaining an order for survey or inspection of premises in dispute; in section 4547 in regard to proof in actions respecting mining claims; in section 5125 in respect to liens. It is evident that the meaning of the term "mining claims," as used in the four sections above cited, includes patented as well as unpatented mining ground. The Revised Statutes of Idaho of 1887 contain the laws enacted at the fourteenth session of our territorial legislature, and it is above shown that the legislature used the term "mining claims" in at least five different sections of the Revised Statutes, and there is no intimation that it was intended that said term should be given any different meaning in one section than should be given to it in another. In *Pitte v. Shipley,* 46 Cal. 160, it is said: "It is a familiar principle of construction that a word repeatedly used in a statute will be presumed to bear the same construction throughout the statute, unless there is something to show that there is another meaning intended." (Sutherland on Statutory Construction, sec. 255.) The Revised Statutes were passed as a single act. My associates hold that in section 1401 the term "mining claim" means only unpatented mineral land. To apply that restricted meaning to it as used in sections 3300, 4542, 4547 and 5125 of the Revised Statutes would certainly violate the plain intent of the legislature in enacting said sections. The judicial decisions of this court speak of unpatented and patented "mining claims" (*Mining Co. v. Winchell,* 6 Idaho, 729, 59 Pac. 533; *Mining Co. v. Clark,* 6 Idaho, 196, 54 Pac. 1007), and it is a part of the history of this state that mining contracts, bonds and deeds concerning patented mining claims entered into and made in this

state, use the expression "mining claims," and that said expression is in common use among lawyers and laymen, when referring to patented mining ground in this state. I have no doubt that the legislature understood and used the expression "mining claims" as used by our court, mining men, and the public generally in this state, and by Mr. Lindley in his work on Mines, where he says that the term "mining claims" includes all mines, whether patented or not patented, if acquired under the mining laws." The justice or injustice of exempting patented mining claims from taxation is a question with which this court has nothing to do. That is a matter for the legislative branch of our state government to determine. Courts have no authority to override the legislative judgment on questions of expediency or abstract justice in the enactment of a law. The judgment of the court below ought to be affirmed.