[L. A. No. 1261. In Bank.—January 30, 1906.]

## J. H. BERENTZ, Respondent, v. BELMONT OIL MINING COMPANY et al., Appellants.

MECHANICS' LIENS—MINING CLAIM—CONTRACT WITH LESSEE—ERRONEOUS JUDGMENT AGAINST OWNER—PROOF OF SERVICE OF SUMMONS —PLEADING—EXCESSIVE LIEN.—In an action to foreclose a mechanic's lien upon a mining claim, under a contract with a lessee, a judgment by default against the owner is erroneous and must be reversed, irrespective of the question whether a constable's certificate of service of the summons, which is unwarranted under sections 410 to 415 of the Code of Civil Procedure, is warranted by section 153 of the County Government Act of 1897, where the complaint fails to allege that the lessee had authority to develop the mine, or that the owner knew what was being done, and where the mine is charged with a lien for a larger amount than the demand stated in the summons, which in this particular does not correspond with the prayer of the complaint.

ID.—LIEN UPON OIL-MINING CLAIM—INTEREST OF LESSEE.—An eighty-acre tract of land in process of development as an oil mine is a mining claim within the meaning of the lien law; and laborers thereon under contract with a lessee thereof have a lien upon the interest of the lessee in the entire claim.

ID.—CONSTRUCTION OF STATUTE.—Construing the law upon the subject of oil locations as being placer mining claims by act of Congress passed in 1897, in connection with the State Lien Law applicable to

mining claims, those who contribute to the benefit of oil claims should have the full benefit of the literal terms of the statute, which should be construed as fully as its terms will admit in harmony with the constitution, which fastens a lien upon the property improved or benefited; and oil claims being within the reason as well as the letter of the law, should be governed by the same rule.

Id. — Work upon Oil-Well — Extent of Lien — Convenient Use — Pleading—Finding.—Work done upon an oil well upon the eighty-acre oil-mining claim creates a lien which extends to the whole eighty acres; and it is not necessary for the complaint to allege, or for the court to find, that the whole of the eighty acres is necessary to the convenient use and occupation of the well.

Id.—Contract Exceeding One Thousand Dollars—Absence of Record—Pleading — Special Demurrer to Complaint — Findings — Harmless Ruling.—Where no contract between the owner of the land and the contractor is recorded, those who work under the contractor have no means of knowledge whether the contract is in writing or not, or whether it is for more or less than one thousand dollars, and these facts being peculiarly within the knowledge of the owner, he suffers no detriment from the failure of plaintiff conjecturally to allege them; and where the court finds, upon clear proof, that the contract was in writing, and for more than one thousand dollars, the error, if any, in overruling a special demurrer directed to this point is harmless.

Id.—Amount Due Contractor—Void Contract.—The contract being void, payment by the owner to the contractor is no defense to the claims of lien; and it is immaterial that the complaint failed to allege that anything was due to the contractor when the lien notices were filed.

Id.—Refusal of Continuance—Absence of Attorney—Discretion—Insufficient Showing.—It was not an abuse of discretion to deny the lessee's motion for a continuance based upon the sole ground that its counsel was detained by previous professional engagements in another county, in the absence of a showing that, under the circumstances, other professional advice was unavailable, and that there was a meritorious defense to the action which could not be effectively presented without the presence of the absent attorney.

APPEAL from a judgment of the Superior Court of Kern County.  J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

William P. Veuve, and A. B. Bigler, for Appellants.

E. B. Coil, and J. W. Wiley, for Respondent.

BEATTY, C. J.—This is an action to foreclose liens of laborers employed in sinking an oil-well. The defendant the Belmont Oil Company owned the south half of a certain quarter-section of land in Kern County known as the "Baradino Placer Mining Claim." The land was leased to its co-defendant, the Kern King Oil and Development Company, and that company had contracted with the defendants Martin and Berry for its development by sinking one or more oil-wells thereon. The contract between the Kern King Company and Martin and Berry was in writing, but was not recorded. Plaintiff and his assignors were employed by Martin and Berry, and performed labor in sinking one of the wells contracted for by the Kern King Company, and they claim a lien upon the entire tract of eighty acres as a "mining claim" within the meaning of that expression as used in the lien law. (Code Civ. Proc., sec. 1183 et seq.) By the decree of the superior court it was adjudged that the plaintiff had a valid lien for the amount found due from Martin and Berry, together with interest and counsel fees, upon the whole of the eighty acres, and that the lien attached not only to the leasehold interest of the Kern King Company, but to the fee. The usual order followed for a sale of the premises, application of the proceeds to payment of costs and satisfaction of the liens, and for a deficiency judgment against the contractors. The two corporations have joined in an appeal from the judgment, which was taken less than sixty days after its rendition, and they have included in the transcript a settled statement on motion for a new trial, claiming, along with other assignments of error, that one of the material findings is unsupported by the evidence. The appeal was taken to this court before the recent amendment of the constitution, and was subsequently assigned to the district court of appeal for the second district, where the judgment of the superior court was reversed as to both appellants. (84 Pac. 45.) The cause is now for decision after rehearing in this court.

As against the Belmont Company and Martin and Berry, the judgment was entered upon their default. The Kern King Company demurred, and, its demurrer being overruled, answered the complaint, but failed to appear at the trial.

We think it was rightly held by the district court of appeal
that the judgment against the Belmont Company is erroneous.
As to it the only evidence of service of summons was a
certificate of a constable, while, except in case of service
by a sheriff, the Code of Civil Procedure requires proof by
affidavit.   (Code Civ. Proc., secs. 410-415.)   There is, how-
ever, a question whether this rule has not been relaxed in
favor of constables by section 153 of the County Government
Bill of 1897 (Stats. 1897, p. 492, c. 277), and since that
question has not been argued we leave it undecided; for, even
if there had been proof or finding of due service of the sum-
mons on the Belmont Company, the default judgment as to
it would have been erroneous, for two reasons: 1. There is
no allegation in the complaint that the Kern King Company
had authority as lessee to develop the mine, or that the
Belmont Company had knowledge that the work was being
done; and 2. The mine is charged with a lien for a larger
amount than the demand stated in the summons, which in
this particular does not correspond with the prayer of the
complaint.   For these reasons the judgment against the Bel-
mont Oil Company must be reversed, and this leaves nothing
to be considered except the right of the plaintiff to a lien
upon the leasehold interest of the Kern King Oil and Develop-
ment Company.

The more important questions presented by the appeal of
that company relate to the construction of the lien law in its
application to claims for labor in the development of mineral
oil lands.   The law contains express provisions as to "mining
claims" to the effect that a miner working on a claim, or a
mechanic erecting reduction works or other structures useful
in connection with mining operations thereon, has a lien upon
the entire claim for his wages, or the value of his material.
(Code Civ. Proc., secs. 1183-1187; *Williams* v. *Mountaineer
etc. Co.,* 102 Cal. 134, [34 Pac. 702, 36 Pac. 388].)   But with
respect to other lands the lien attaches only to the ground
upon which the building or other structure stands, together
with a convenient space about the same, or so much as may
be found by the court necessary for the convenient use and
occupation of such structure.   (Code Civ. Proc., sec. 1185.)
In construing this law the district court of appeal followed

what it understood to be the decision of this court in *Williams*
v. *Mountaineer etc. Co.*, 102 Cal. 134, [34 Pac. 702, 36 Pac.
388], and held that there are two distinct categories of liens
provided for, and that they are mutually exclusive,—viz.,
liens for labor or materials employed or used in the construc-
tion of "any building, wharf, bridge, ditch, flume, aqueduct,
well, tunnel, fence, or other structure" where the lien at-
taches only to so much land adjacent to that upon which the
structure stands as may be found necessary for its convenient
use, and liens for labor and materials employed or used on
mining claims, where the lien attaches to the entire claim
and all its appurtenances. It is also held that a tract of
land, though known as a placer mining claim and in process
of development for the discovery and production of mineral
oil, is not a mining claim within the meaning and intention
of the lien law. The conclusion necessarily followed that the
lien in question here fell within the category of those which
attach to the structure only and a convenient space about it,
and the judgment of the superior court was reversed for
the reason that there was neither allegation, evidence, nor
finding that the whole eighty acres was necessary or con-
venient for the use and occupation of the well. We think
the district court of appeal misconstrued the decision in
*Williams* v. *Mountaineer etc. Co.*, as holding that the two
categories of liens are mutually exclusive. The appellant in
that case had furnished material for the construction of a
mill, a tramway, a boarding-house and other buildings, every
one of them "structures" included in the first category upon
which, with a convenient space about them respectively, he
would have had a separate lien if they had been erected for
different owners for purposes other than the working of a
mine, but because they were built for a mine-owner for use
in working his mine, the appellant's claim of a separate lien
upon them was disallowed, and his security was completely
lost because he had not described the mining claim in his
notice of lien. The effect of that decision, in short, is to
transfer any building or other structure from the first to the
second category whenever it is an adjunct or appurtenance
to a mining claim; and if a tract of land upon which a well
is being drilled for the purpose of extracting mineral oil is
a mining claim, the well, notwithstanding the inclusion of

wells in the enumeration of structures upon which separate liens are allowed, is an essential part of the mine, and for that reason the lien of those who have made it extends to the whole claim, and would be lost if less was described in the lienor's notice.

The question, therefore, is whether this eighty-acre tract of land in process of development as an oil mine is a mining claim within the meaning of the lien law, and we think that in any view of the case this question must be answered in the affirmative. Under the act of Congress of 1897 (Act Feb. 11, 1897, ch. 216, 29 Stats. 526, [U. S. Comp. Stats. 1901, p. 1434]), the location and sale of oil land is governed by the mineral laws of the United States applicable to the location and sale of placer mining claims, and if land is located and held under this law, it is a mining claim before patent in every sense of the word, and for the purpose of the lien law it does not cease to be a mining claim when, by a patent from the government, the fee is transferred to the locator or his assigns. This was clearly held in *Bewick* v. *Muir,* 83 Cal. 372, [23 Pac. 389], and the authority of that decision has never been questioned. Something said *obiter* by Justice Sharpstein in the course of his opinion in regard to lands granted by the Mexican government was disregarded in *Morse* v. *De Ardo,* 107 Cal. 624, [40 Pac. 1018], but it was not there decided that ground actually worked as a mine within a larger tract of agricultural land was not subject to a lien as such. The judgment of the lower court decreeing a lien upon twenty-six out of one hundred and sixty acres of land, including the mining works, was reversed for want of a finding that the smaller tract was a mining claim. The question for decision here is therefore unembarrassed by any previous decision of the court inconsistent with the view above expressed, and we have only to deal with the points advanced in the argument in support of the opposite view. It is contended that the lien law, in speaking of mining claims, refers to mines of ore exclusively, but we think there is nothing in the language or policy of the law to justify that construction. By the act of Congress passed in 1897, oil locations were brought within the category of mining claims, and if the legislature in re-enacting section 1183 of the Code of Civil Procedure in 1899 had intended to restrict its opera-

tion to mines of ore, it would have made an express exception
of oil locations. But not only was no such exception made,
there was good reason why it should not be made. The
constitution of the state gives to mechanics, materialmen,
artisans, and laborers of every class a lien upon the property
upon which they have bestowed labor, or for which they
have furnished material, for the value of such labor and
material, leaving to the legislature only the task of providing
for the speedy and efficient enforcement of such liens. (Art.
XX, sec. 15.)

There may be a question whether the legislature has thor-
oughly fulfilled its duty in this respect, but the law, such as
it is, should be given a construction as fully in harmony with
the constitution as its terms will admit, and since there is
no reason for making a discrimination against those who
contribute to the development of oil claims, they should have
the full benefit of the literal terms of the statute. This,
indeed, is necessary to preserve its harmonious operation.
The constitution and the law alike purport to give the artisan,
laborer, or materialman a lien upon "the property" which
his labor or materials have created or improved. If labor
or materials have gone into a building or other structure,
the lien attaches to the structure, to the ground upon which
it stands, and to a space about it sufficient for its convenient
use or occupation, that being deemed—and rightly so—the
property created or improved. In case of labor or material
contributed to the development or working of a mine, the
rule, though expressed in different terms, is in effect the
same. For mining claims have always been restricted by
the rules and customs of miners prior to the enactment of the
mining laws, and since that time by the laws themselves,
to what is regarded as a reasonable quantity of placer ground,
and in case of lode claims to so much only of the ground
adjacent to the lode as is required for convenient working.
The statute, therefore, does not in reality contain two rules
for determining what is subject to a laborer's or material-
man's lien. It contains but one rule, and that the rule of
the constitution which fastens a lien upon the property im-
proved or benefited; and oil claims, being within the reason
as well as the letter of the law, are, as they should be, gov-
erned by the same rule. When labor or material is expended

in developing an oil claim, the lien attaches to the claim. If it is the claim of a single locator to twenty acres, the lien covers the twenty acres, and if it is a consolidated claim of several locators the lien will cover the whole of the consolidated claim, if it is being worked as a whole. In this case the land—eighty acres—is only half the size permitted by law to be located as a consolidated claim. It is known as the "Baradino Placer Mining Claim." It is described in the complaint as a mining claim. It is not denied in the answer of the Kern King Company that it is a mining claim. The court finds that said company had a lease of the claim with power to develop it, and that it owns all the apparatus and improvements on the ground. There was really no issue between the plaintiff and the Kern King Company as to the land being a mining claim—so far as oil land can, under any circumstances, be a mining claim—and if there had been an issue it is found in favor of the plaintiff. The superior court, therefore, did not err in holding that plaintiff's lien extended to the whole eighty acres. This conclusion disposes of all the exceptions based upon the failure of plaintiff to allege, and of the court to find, that the whole of the eighty acres is necessary to the convenient use and occupation of the well.

Several assignments of error are based upon the failure of plaintiff to allege that the contract with Martin and Berry was in writing, or that it was for more than one thousand dollars. When no contract between the owner of land and his contractor is recorded, those who work under the contractor have no means of knowledge whether the contract is in writing or not, or whether it is for more or less than one thousand dollars, and these facts being peculiarly within the knowledge of the owner, he suffers no detriment from the failure of plaintiff to make them the subject of conjectural allegation. Here the facts that the contract was in writing and that it was for more than one thousand dollars, were clearly proved and found by the court, and the error, if any, in overruling the special demurrer directed to this point was harmless. This view also disposes of the objection to the second and third counts of the complaint for failing to allege that anything was due the contractors when the lien notices were filed. The contract being void, payment by the owner to the contractor is no defense to the claim of lien.

· We cannot say that it was an abuse of discretion to deny the Kern King Company's motion for a continuance, based upon the sole ground that its counsel was detained by previous professional engagements in Santa Clara County It should have been made to appear that under the circumstances other professional advice was unavailable, and that there was a meritorious defense to the action, which could not be effectively presented without the presence of the absent attorney. Nothing of this kind was shown.

We find no error in the proceedings of the superior court prejudicial to the Kern King Oil and Development Company, and the judgment against it is therefore affirmed. The judgment against the Belmont Oil Company is reversed, and the cause remanded for further proceedings against that company as the plaintiff may be advised.

Henshaw, J., Shaw, J., McFarland, J., Angellotti, J., and Lorigan, J., concurred.