Argued December 23, 1909, decided January 25, 1910; rehearing denied April 26, 1910.

## ESCOTT *v.* CRESCENT COAL & NAV. CO.

[106 Pac. 452.]

MINES AND MINERALS—COAL MINES—"MINING."

1. The form of coal obtained from the strata of the earth is a carbonaceous mineral substance, commonly known as mineral coal, and the procurement thereof by digging in the earth is termed "mining."

MINES AND MINERALS—LIENS FOR LABOR AND MATERIALS—STATUTE—CONSTRUCTION—"MINE"—"DEPOSIT YIELDING METALS OR MINERALS OF ANY KIND"—"MINING CLAIM."

2. The terms "mine" or "deposit yielding metals or minerals of any kind," as used in Section 5668, B. & C. Comp., giving laborers and materialmen a lien for the working or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, include a coal mine, although the term "mining claim" as used therein may not do so.

STATUTES—TITLE AND SUBJECT—STATUTE GIVING LIEN FOR LABOR AND MATERIALS.

3. The title of Section 5668, B. & C. Comp., giving laborers and materialmen a lien for the working or development of any mine, lode, mining claim, or deposit yielding metals, or minerals of any kind, reads: "An act for securing liens for laborers on mining claims, and materialmen, and prescribing the manner of their enforcement." The Constitution, Article IV, Section 20, provides that every act shall embrace but one subject, which shall be expressed in the title, etc. *Held*, that Section 5668 is not unconstitutional, under Article IV, Section 20, as being broader than the title, in that the title purports to secure liens on "mining claims" only, and not to include mines generally, since, although

the term "mining claim" as used in the title is not clear, the courts will not resort to a critical construction of the title in order to hold a statute unconstitutional, but will give the language a liberal interpretation, and the largest scope will be accorded to the words employed that reason will permit, in order to bring within the purview of the title all the provisions of the act.

MINES AND MINERALS—STATUTE GIVING LIEN FOR LABOR AND MATERIALS —CONSTRUCTION.

4. In construing a statute the court must look to the purpose for which it was enacted, and statutes providing for liens are to be construed in favor of the purpose of the law. Hence where the purpose of a statute was to protect laborers and materialmen of a particular class, and the legislature used the words "mining claim" in the title, the words are not to be strictly construed to determine the right to a lien, but they are to control in measuring the extent of the lien.

MINES AND MINERALS—STATUTE GIVING LIEN FOR WORK AND MATERIALS —AMENDMENT—EFFECT.

5. Where the legislature so amended an act (Laws 1907, p. 293), providing for labor and materialmen's liens upon mines so as to specifically provide for such a lien upon mines containing coal, by so doing it did not conclusively declare that prior thereto no such lien had been provided for, for persons working in or furnishing materials for a coal mine; and, where prior to the amendment a person sought to establish a laborer's lien for work done upon a road leading to a coal mine, and the court held that no such lien was provided for, and the amendment provided for such a lien, it must be supposed that the amendment was to meet only the deficiency pointed out in that case. Hence the legislature must have assumed that the original statute included work done upon coal mines.

From Coos:  JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE SLATER.

This appeal is taken from a decree of the circuit court of Coos County, foreclosing a number of laborers' liens upon the defendant's coal mine in that county, for work alleged to have been performed thereon by plaintiff and his assignors for defendant's lessees during the year 1906; the lease not having been recorded. A general demurrer was interposed to the complaint, which was overruled, and, defendant refusing to plead further, a decree was entered.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Joseph W. Bennett.*

For respondent there was a brief over the names of *Mr. Charles F. McKnight* and *Mr. L. A. Liljeqvist* with an oral argument by *Mr. McKnight.*

Mr. Justice Slater delivered the opinion of the court.

1. Defendant's contention is that, at the time the work and labor was performed for which the liens were filed, there was no statute of this State, giving a lien upon a coal mine. Section 1 of an act, approved February 20, 1891, (Sess. Laws 1891, p. 76), which, as amended by the act of February 18, 1899 (Sess. Laws 1899, p. 180), is Section 5668, B. & C. Comp., provides that:

"Every person who shall do work upon or furnish material for the working or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, * * shall have a lien upon the same to secure to him the payment for the work or labor done, or material furnished by each," etc.

The form of coal obtained from the strata of the earth is a carbonaceous mineral substance, commonly known as mineral coal, and the procurement thereof, by digging in the earth, is termed "mining." 27 Cyc. 532.

2. The primary meaning of the word "mine," standing alone, is an underground excavation, made for the purpose of getting minerals, or a pit or excavation in the earth from which metallic ores, or other mineral substances, are taken by digging, but it may also include the deposit, bed, or vein of mineral substance, into which the pit or shaft enters. 27 Cyc. 532. In *Smith* v. *Sherman Min. Co.,* 12 Mont. 524 (31 Pac. 72), it was held that the word "mine," as used in the lien law of that state, meant the whole claim or body of mining ground. It is therefore clear that a "coal mine" comes within the meaning of the terms "mine" or "deposit yielding metals or minerals of any kind" used in the statute, although it may not come, as defendant contends, within the term "mining claim," also use therein in the same connection.

3. But it is also contended that the general import of the words of the statute just quoted must be confined to the technical meaning of the words "mining claim" because of the use of that phrase in the title of the act to the

exclusion of the words, "mine," "lode," or "deposit." The
title reads, "An act for securing liens for laborers on min-
ing claims, and materialmen, and prescribing the manner
of their enforcement." In other words, the contention is
that the act is broader than the title; and, as the title
referred to purports to secure liens on mining claims only,
the provision of the act should be construed to refer to
mining claims only, and not to include mines generally,
because to construe it to have a broader meaning would
be in violation of Article IV, § 20, of the Constitution of
Oregon, which requires that:

"Every act shall embrace but one subject, and matters
properly connected therewith, which subject shall be ex-
pressed in the title. But if any subject shall be embraced
in an act which shall not be expressed in the title, such
act shall be void only as to so much thereof as shall not
be expressed in the title." B. & C. Comp., p. 41.

In *Singer Mfg. Co.* v. *Graham*, 8 Or. 17 (34 Am. Rep.
572), it was held that an act (Deady's Gen. Laws, p. 745,
c. 20) which required "a foreign corporation before
doing business in this State" to appoint a resident attor-
ney, with authority to receive service of process in any
action which may be brought against it in this State, was
limited, in its application, to foreign corporations doing
an insurance, banking, express, and exchange business,
because of the restricted character of the title of the act,
which read:

"An act to regulate and tax foreign insurance, bank-
ing, express and exchange corporations or associations
doing business in the State."

The same ruling was made in the case of *Oregon &
W. Trust Inv. Co.* v. *Rathburn*, 5 Sawy. 32 (18 Fed. Cas.
764). In those cases the language used in the title to
express the subject-matter, upon which legislation was
intended, is clear and unambiguous. There was no room
for construction, and nothing for the court to do but to

Sig. 7

apply the plain mandate of the constitution.  Here, how-
ever, the meaning of the expression "mining claim," as
used in the title of the act under consideration, is not
clear.  Courts will not resort to a critical construction of
the title in order to hold a statute unconstitutional.  On
the contrary, the language of the title is in all cases given
a liberal interpretation, and the largest scope will be
accorded to the words employed that reason will per-
mit, in order to bring within the purview of the title
all provisions of the act.  26 Am. & Eng. Enc. (2 ed.)
§ 583.  But, where the act is broader than the title, and
"the language employed in the title is such as would lead
a reasonable man to suppose that the legislature intended
to restrict the scope of the act within certain limits
specified in the title, such act is unconstitutional, so far
as concerns any provisions outside the limits thus marked
out, even though such provisions might properly have
been included in the act under a broader title."  Am. &
Eng. Enc. Law (2 ed.) § 590.

4. It has been urged by defendant that at the time
of the passage of the act the term "mining claim" had
been used in the statutes of the United States, and of our
State, and had acquired a well-defined meaning, not only
by popular use, but by the countenance and authority of
judicial decisions.  Some of the authorities cited in sup-
port of this contention are *Mount Diablo M. & M. Co.* v.
*Callison,* 5 Sawy. 439 (17 Fed. Cas. 918) which defines
the term to mean "that portion of the public mineral lands
which the miner, for mining purposes, takes up and holds
in accordance with mining laws, local and statutory."
*Williams* v. *Association,* 66 Cal. 193 (5 Pac. 85), which
holds that a "mining claim," as the term is used in the
statutes of the United States, is that portion of a vein
or lode, and of the adjoining surface, or of the surface
and subjacent material, to which a claimant has acquired

the right of possession by virtue of a compliance with the laws of the United States and the local rules and customs of miners. And in *Morse* v. *De Ardo,* 107 Cal. 622 (40 Pac. 1018), it was said that "independent of acts of Congress providing a mode for the acquisition of title to the mineral lands of the United States, the term 'mining claim' has always been applied to a portion of such lands to which the right of exclusive possession and enjoyment, by a private person or persons, has been asserted by actual occupation, or by compliance with local mining laws, or rules, or customs." Other cases to the same purport are *Williams* v. *Santa Clara Mining Co.,* 66 Cal. 193 (5 Pac. 85) ; *Salisbury* v. *Lane,* 7 Idaho 370 (63 Pac. 383). But, conceding that the definition given in these authorities is correct, it is in the main, a technical meaning of the term, confined to the character, as well as the extent, of the title, and the interpretation of the term was manifestly controlled by the facts of the case, and the connection in which it was used. To construe a statute we must look to the purpose for which it was enacted, and statutes providing for liens are to be construed in favor of the purpose of the law: *Salisbury* v. *Lane,* 7 Idaho 370 (63 Pac. 383). The purpose of the one in question was to protect laborers and materialmen of a particular class in the collection of the value of their labor and material. We think the term "mining claim," as used in the title of this act, may, in reason, be given a broader signification than that ascribed to it in the decisions cited, and to be held to mean a piece of ground to which a vested right, either of exclusive possession or of a title in fee, is asserted for the purpose of mining in general.

In *Bewick* v. *Muir,* 83 Cal. 368 (23 Pac. 389), it was contended that, where the owners of a mine had obtained a patent therefor, it was not a "mining claim," properly so called, and that the term "mining ground," used in the

findings, is not the equivalent of "mining claim." But the court said:

"We think that for the purposes of the law it makes no difference whether the owners had obtained a patent or not. If this is not so, it would follow that a laborer upon a mine for which a patent had issued from the government has no lien. This is not the meaning of the law. The words 'mining claim,' as used in the law, have no reference to the different stages in the acquisition of the government title. In our opinion it includes all mines, whether the title is inchoate, as in the case of a mining claim in its strict sense, or perfect, as in the case of a fee-simple title. It may not make any difference if the title to the mine had passed under a Spanish grant."

It was also held that the phrase "mining claim" included "mining ground." In a later case, that of *Morse v. De Ardo,* 107 Cal. 622 (40 Pac. 1018), the same court commented upon the language used in *Bewick* v. *Muir,* seeming to think, in part, that it was *obiter dicta.* But in *Berentz* v. *Belmont Oil Co.,* 148 Cal. 577 (84 Pac. 47: 113 Am. St. Rep. 308), a still later case, in which the question presented for decision was whether an 80-acre tract of land, in process of development as an oil mine, was a mining claim within the meaning of the lien law of that state, the court held that it was. It appears that the land in question had been known as the "Baradino Placer Mining Claim," and had been patented, but leased for the purpose of its development for oil. After stating that, for the purpose of the lien law, the land does not cease to be a mining claim by the issuance of a patent, it was said:

"This was clearly held in *Bewick* v. *Muir,* 83 Cal. 372 (23 Pac. 389), and the authority of that decision has never been questioned. Something said *obiter* by Justice SHARPSTEIN, in the course of his opinion, in regard to lands granted by the Mexican government, was disregarded in *Morse* v. *De Ardo,* 107 Cal. 624 (40 Pac. 1018), but it was not there decided that ground actually worked as a mine within a larger tract of agricultural land was

not subject to a lien as such. The judgment of the lower court decreeing a lien upon 26 out of 160 acres of land, including the mining works, was reversed for want of a finding that the smaller tract was a mining claim."

It appears quite clear from these decisions that, when used in a lien law, the words "mining claim" are not to be construed in their strict sense for the purpose of determining the right to a lien, but that they control in measuring the extent of the lien.

The peculiar place accorded to the words "mining claim" in the title of the act in question here also leads us to believe that a reasonable man would not suppose that the legislature thereby intended to restrict the scope of the act to laborers on "mining claims," strictly so called. It will be noticed that these words "on mining claims" immediately follow the word "laborers," and precede the words "and materialmen," so that if they are construed in their strict sense, and be given the restrictive power claimed for them, it must be held to be confined to "laborers," and not to apply to "materialmen," thus giving the one class of lienholders the benefits of the full scope of the body of the act, while confining the other class to a very restricted and limited benefit. We cannot believe that such was the intent or belief of any member of the legislature who participated in the enactment of this law.

5. It is also contended that, because in 1907 (Laws 1907, p. 293) the law was so amended as to specifically provide for laborers' liens upon mines containing coal, there exists a legislative declaration that prior thereto no lien had been provided by statute for persons working in or upon coal mines, or for furnishing supplies or material therefor. While in a proper case this might have some weight, it is not conclusive: *Portland R. L. & P. Co.* v. *Railroad Commission* (filed December 21, 1909), 105 Pac. 709. But in *Williams* v. *Toledo Coal Co.*, 25 Or.

426 (36 Pac. 159: 42 Am. St. Rep. 799), the plaintiff sought to establish a laborer's lien for work done upon a coal mine, under the act now in question. A demurrer to the complaint was sustained, because it appeared that a part of the work, for which the lien was claimed, was upon a wagon road leading to the mine, and a lump charge was made for all work. It was held that no provision was made by the statute for work upon wagon roads in connection with a mine, and for that reason the lien must fail. This case was decided in March, 1894. In 1899 the act was so amended as to include work done upon a road used for the working or development of a mine. It is but reasonable to suppose that the statute was amended to meet the deficiency therein pointed out by the decision in *Williams* v. *Toledo Coal Co.* Hence the Legislative Assembly must have assumed, as apparently did the court, that the statute, as originally enacted, included work done upon coal mines although the question does not appear to have been suggested in the trial of that case. We do not rely, however, upon this circumstance to affirm the decree, but mention it only as an answer to the claim made of a legislative construction by the assembly of 1907, in favor of defendant's contention.

The decree is affirmed upon the reason of the case as first stated.                                            AFFIRMED.