435 P.2d 348

James T. KNUDSON, Administrator of the
Estate of Ezra R. Whitla, Deceased,
Plaintiff-Appellant,

v.

BANK OF IDAHO, Guardian of the estate of
Ezra R. Whitla, Incompetent, De-
fendant-Respondent.

In the Matter of the GUARDIANSHIP OF
Ezra R. WHITLA, Incompetent.

No. 10029.

Supreme Court of Idaho.

Dec. 18, 1967.

Marcus, Leggat & Marcus, Boise, for appellant.

William A. Reagan, Coeur d'Alene, for appellee.

TAYLOR, Chief Justice.

In October, 1963, Bank of Idaho (respondent) was appointed guardian of the estate of Ezra R. Whitla, incompetent. In proceedings initiated in 1964 for the sale of the real property of the estate of the ward, the probate court entered its order dated February 26, 1965, denying objections to the proposed sale which had been filed by Margaret Wood, guardian of the person of Ezra R. Whitla, incompetent, and confirmed and approved the sale of the property to Forrest G. Godde and wife for the sum of $240,000, on terms and conditions set out in the contract entered into between the respondent bank and the purchasers.

Margaret Wood, guardian of the person of the incompetent, appealed to the district court. The notice of appeal recites that the appeal is taken:

"from that certain order entered in the Probate Court, Kootenai County, Idaho, on the 26th day of February, 1965, denying the 'Objections to the Sale of Real Estate' of MARGARET WOOD, 'and from the whole thereof. This appeal is taken on questions of both law and fact."

The respondent bank moved to dismiss the appeal on the ground that it purported to have been taken from an order denying objections to the sale of the real estate, which is not an appealable order within the provisions of I.C. § 17-201. However, we regard the appeal as taken from the order confirming the sale. The notice of appeal is defectively worded, but it does recite that the appeal is taken from the whole of the order of February 26, 1965. That order not only denied the objections to the sale, but confirmed the sale as proposed. The praecipe for the clerk's transcript from the probate court referred to the appeal as taken from the "Order Confirming Sale." Respondent was not misled by the language of the notice of appeal. The district court properly denied the motion to dismiss the appeal. Cf. Huggins v. Green Top Dairy Farms, 74 Idaho 266, 269, 260 P.2d 407, 409 (1953).

At the opening of the trial in the district court, the court advised counsel that the issues to be tried were those raised by the written objections filed by the guardian of the person of the incompetent.

At that time the court further ruled:

"Now, it is my understanding also in the way of procedure here that the ones raising the objections to the sale having appealed from the ruling of the lower court should proceed with their presentation first, is that right, gentlemen?

"MR. REAGAN: Yes, your Honor.

"MR. MARCUS: We do not accede to that ruling of the court that we should proceed first and wish to preserve our rights with respect to it but we are ready to proceed if the court so directs."

This ruling was erroneous. The appeal was taken on questions of both law and fact. The statute requires that on such appeal the trial in the district court shall be de novo. I.C. § 17–206. Trial de novo contemplates the trial anew of the same issues tried in the probate court, and that the trial be conducted the same as though commenced in the district court. Yribar v. Fitzpatrick, 87 Idaho 366, 393 P.2d 588 (1964); Collins v. Lindsay, 33 Idaho 230, 191 P. 357 (1920); Kent v. Dalrymple, 23 Idaho 694, 132 P. 301 (1913).

The issues to be tried were framed in the probate court by the return of sale and petition for confirmation on the part of the guardian of the estate, and the objections thereto on the part of the guardian of the person.

 On the appeal these same issues were to be tried de novo in the district court. Estate of Christensen, 15 Idaho 692, 99 P. 829 (1909). The burden rested upon the proponent of the sale to show that the statutory prerequisites to a valid sale had been fully complied with. This burden rested upon the proponent on the hearing in the probate court and on the trial de novo in the district court. No burden of proof was cast upon the party objecting to the sale by reason of that party's appeal from the order confirming the sale. The only burden on the objector would be the proof of an affirmative issue raised by her objections. However, in this case we regard the error as one of procedure only, and nonprejudicial. The district judge in making the ruling did not indicate that he was casting the burden of proof upon the appellant, but only that the appellant should make her presentation first. All of the issues raised by the objections, plus the adequacy of the sale price, were tried in the district court and the record does not disclose that the party opposing the sale was in any way limited in the presentation of evidence material to the issue of confirmation. The procedure adopted gave the appellant the advantage of an opportunity to rebut the evidence presented by the proponent of the sale. The fact that the objector, appellant, rested her case without offering any rebuttal evidence tends to indicate that she had presented all available evidence having a bearing upon the issues presented by the petition for confirmation and her objections thereto. An error or defect in procedure which does not affect the substantial rights of the complaining party cannot be made the basis of reversal. IRCP Rule 61; Morford v. Brown, 85 Idaho 480, 381 P.2d 45 (1963).

The return of sale and petition for confirmation alleged that the guardian had sold the property to Mr. and Mrs. Godde for the sum of $240,000 upon terms and conditions set forth in the contract of sale attached to the return as Exhibit A; that the purchase price agreed upon was the highest and best bid received; that the sale was legally made and fairly conducted; that it was necessary for the preservation of the estate and for its benefit; that the property had been operating at a loss; that the price was not disproportionate to the value of the property and was in excess of the appraised value thereof; that a bid exceeding the contract price by 10%, exclusive of expenses of a new sale, could not be obtained. The attached contract recited a consideration of $240,000; acknowledged payment of $25,000; provided for a payment of $25,000 upon confirmation; provided for the payment of the balance of $190,000 in ten annual installments of $19,000 each, plus interest at 6% per annum on the unpaid balances; that title remain vested in the seller until the purchase price is paid in full; that the documents affecting the sale be held in escrow pending performance; that the buyers have the right to obtain partial releases of 160 acre parcels, and conveyances thereof, by paying at the time of any such release a proportionate amount of the pur-

chase price attributable to the acreage to be released in addition to the yearly payment of principal and interest; that the sale was made subject to an outstanding timber contract by which the ward had previously sold the merchantable timber on the property to a third party; that it was understood that the title to the property was not in a marketable condition; and that the seller would quiet the title in an action to be instituted for that purpose.

In response to the return and petition for confirmation of sale, Margaret Wood, as guardian of the person of Ezra R. Whitla, filed written objections to the sale, which were as follows:

"1. That the sale of said property is not at this time needed for the care, treatment and support of the ward.

"2. That such sale is not necessary for the benefit of the ward such that the proceeds thereof should be invested nor is it necessary for the improvement or security of any other real estate.

"3. That such sale is more for the benefit of the guardian of the estate rather than the ward himself.

"4. That said property, if sold over a long period of time would have more of an opportunity of gain and benefit to the ward.

"5. That the property as advertised for sale and being proposed to be sold by this petition, includes property which in fact does not belong to the guardianship estate."

In opposition to the sale the guardian of the person of the ward produced the testimony of an expert appraiser, Fred Ashley, who had examined the property and testified that it had a fair market value of $525,000, which included the value of the timber standing thereon worth $198,000; that the property had a rental value of $17,000 per annum; that the property could be sold more profitably in smaller parcels; (on cross-examination) that it was impossible to say whether a better price could be obtained by selling the property in smaller parcels; that the soil on the agricultural parts of the property was of very high quality and in top condition.

The appellant Wood then called as a witness the trust officer of the respondent bank who was in charge of the Whitla guardianship. This witness testified that the outstanding timber contract and the proceeds therefrom were included in the property sold and would go to the buyer; that the cost of caring for the ward was $300 to $350 per month; that among liquid assets of the estate were $426.89 cash, $5,000 U. S. Treasury Notes, $45,000 U. S. Treasury Bills, and $14,000 in stocks and $6,804 in miscellaneous personal property.

No other evidence was offered by appellant.

Witnesses for the respondent bank testified in summary as follows:

Elmer Drexel, a farmer in Kootenai County, who also had dealt in real estate, sales, loans, and appraisals for 17 years, appraised the Whitla property at $175,000, including the timber thereon at $20,000. He further testified that the grazing land of the estate would support 300 cow and calf units; that loan companies value such land at the rate of $350 for each cow and calf unit it will support, and will loan 50% of that amount thereon; that it would require an expenditure of $17,000 to bring the grazing land into condition to handle the 300 cow-calf units; that 90% of the agricultural land was in "real poor condition"; that the improvements on the property were of the value of $17,000; that he had made his appraisal for a group, including himself, who were interested in purchasing the property, and had filed a bid of $160,000 for the purchase of the property at the trustee's sale.

George T. Keyser, Jr., an agricultural representative of the respondent bank testified that he had visited the lower parts of the property in company with Mrs. Wood, appellant, in May, 1964; that the grazing area would support 300 to 400 cow-calf units; that the farm land was in bad con-

dition, showed evidence of erosion, had a lot of Canadian thistle, and the hay land was dying out; that the dwelling was good, the barn obsolete; that considerable fencing would be necessary; that it would require an expenditure of $40,000 to $60,000 to bring the entire property into condition to support 300 to 400 cow and calf units, in addition to the cost of the livestock.

Clyde Stranahan, an employee of the U. S. Department of Agriculture and the county agent for Kootenai County for twenty years, testified that the agricultural land on the estate property was as good as the average in that area; that it lacked organic matter and was in a sulphur deficient area; that it had not been farmed properly for some years; that the soil was of a character subject to erosion and had suffered considerable erosion; that some of it was badly infested with noxious weeds, Canadian thistle in particular; that most of it was in hay and pasture and would produce an average of around a ton of hay per acre.

Patrick Flammia, president of Coeur d'Alene Stud Company, the sawmill company which held the timber contract on the estate property, testified that he was familiar with the land; that his company had been cutting timber thereon for two years; that it had advanced $5,000 on stumpage to Mr. Whitla, and that there was still a balance due his company on that advance; that he bought the timber on a stumpage basis, paying for the timber actually removed; that the timber on the estate land is so scattered that cruising it would be almost impossible and would cost more than the timber was worth.

Earl Z. Anderson, the county assessor, testified that none of the estate property was classified as timber land on the county assessment rolls.

Howard Drake, a retired logging engineer and consulting forester, testified he had examined the Whitla property in 1960 and had made an appraisal for Mr. Whitla fixing values as of 1957; the appraisement was made to furnish Mr. Whitla with information to support his opposition to a claim by the Internal Revenue Service for an additional inheritance tax from Whitla on the half of the property inherited by him from the estate of his wife, who died in 1957; that as of 1957 the value of the land was $108,868, and of the timber thereon $15,870; that due to the slow growth of timber, its value would not have enhanced to any great extent between the time of his examination of the property and the date of sale.

Mr. C. M. Boardman, the trust officer of the respondent bank, testified that the operation of the estate property resulted in a loss for the year 1961 of $424.79, for 1962 of $1166.25, for 1963 of $2197.92, for 1964 a loss of $1648.43; that the agricultural representative of the bank had examined the operation in March, May and September, 1964; that the trustee had determined that the cost, and the time it would take, to condition the land of the estate so that its operation could be made profitable would be so great as to render an attempt to do so unjustifiable, particularly in view of the fact that the life expectancy of the ward was nil.

Mr. Boardman also testified that in response to the first notice of sale, bids were received as follows:

| By | In the Amount of |
|---|---|
| Kelly Realty | $ 153,175.00 |
| Drechsel Associates | 160,000.00 |
| Forrest Godde | 152,715.00 |
| Mr. Dey | 150,000.00 |
| Nagel, attorney, for his clients | 150,500.00 |
| Potlatch Forests, Inc. | 125,000.00 |

Return of sale and petition for confirmation was made on one of the foregoing bids. Upon the hearing of the petition, other bidders appeared and offered more than 10% above the bid returned. The probate court then rejected all bids and ordered a new sale. Following the second notice of sale, bids were received as fol-lows:

| By | In the Amount of |
|---|---|
| Forrest Godde | $ 240,000.00 |
| Mr. Pernell (less commission $10,000) | 225,000.00 |
| Robert DeArmond | 153,175.00 |

Sale was then made, and later confirmed, to Forrest Godde and wife for $240,000.

Mr. Boardman also further testified that the bank had never employed an independent, qualified appraiser to make appraisal of the property, and had never had a cruise made of the timber thereon; that the advertising and publication of notice of sale by the guardian was sufficient to comply only with the requirement of the statute.

■ The trial court found that the timber on the property was of little value. This finding is assigned as error. The finding is not specific in that it does not fix a value upon the timber. However, when considered in comparison to the value of the timber as fixed by appellant's witness, the testimony of respondent's witnesses as to such value, supports the finding.

■ Appellant assigns as error the finding of the court that the sale price was not disproportionate to the market value of the property on the day of sale, and was as great or greater than the market value on that date. From the résumé we have given of the evidence on the issue of value, it is apparent that the finding is supported by competent and substantial evidence. The finding is therefore binding upon this court. I.C. § 13–219, and notes thereto; IRCP Rule 52(a).

Three of appellant's assignments raise the issue of the authority of the probate court and the district court to confirm the sale in view of the fact that the estate was possessed of sufficient personal property and income to pay for the care, treatment, and support of the ward. Appellant cites I.C. §§ 15–1819,[1] 15–1821,[2] and 15–1829.[3] The evidence would not support a sale made for the purpose of raising funds for the support, care, or maintenance of the ward. Respondent disclaims any authority to sell the real property for that purpose, but contends that the sale was made for the pur-

1. "Every guardian appointed under the provisions of this chapter, whether for a minor or any other person, must pay all just debts due from the ward out of his personal estate and the income of his real estate, if sufficient; if not, then out of his real estate upon selling or mortgaging it and disposing of the proceeds in the manner provided in this chapter."

2. "Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance, support and education of the ward and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell or mortgage the real estate, as provided in this title, and must apply the proceeds of such sale or mortgage, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

3. "When the income of an estate under guardianship is insufficient to maintain the ward and his family or to maintain and educate the ward when a minor, or to pay for his care, treatment and support, if confined in a hospital for the insane, his guardian may sell or mortgage his real or personal estate, for that purpose, subject to confirmation of such sale or mortgage by the court."

pose of putting the proceeds out at interest, for the benefit of the ward, as authorized by I.C. § 15–1830, which provides:

"When it appears to the guardian, that, for the benefit of his ward, his real estate, or some part thereof, should be sold, and the proceeds thereof put out at interest, or invested in some productive securities, or in the improvement or security of any other real estate of the ward, his guardian may sell the same for such purpose, at public or private sale subject to confirmation by the court."

The probate court specifically found that in making the sale the guardian acted in the best interests of the estate and its order was affirmed by the district court. In addition to the findings hereinabove noted the district court found that the operation of the property sold was causing an invasion of the principal of the estate rather than showing a profit to the estate; that the sale was fairly and regularly conducted, and made in compliance with the statutes. These findings were sufficient to support the sale under the provisions of I.C. § 15–1830, supra.

Appellant also challenges the authority of the trial court to confirm the sale under the terms of the contract, which permits delivery of title to portions of the property prior to payment of the contract price in full without further consideration or confirmation by the probate court, and which permits payment over a period of ten years. Idaho Code § 15–1834 provides that proceedings for the sale of property by guardians and the making of orders rejecting or confirming such sales and ordering and making conveyances of property sold, must be had and made as required by provisions governing the estates of decedents. Idaho Code § 15–1835 formerly provided that "All sales of real estate of wards must be for cash, or for part cash and part deferred payments, the credits in no case to exceed three years from date of sale, * * *." This section was repealed by the legislature in 1963, Session Laws 1963, Ch. 27, p. 169.

Idaho Code § 15–717, provides the terms of sale of real estate of decedents and is as follows:

"All sales of real estate, or any part thereof or interest therein, may be for cash, or on credit, or by written bond, contract, lease with option to purchase, option to purchase, or title retaining contract. The executor or administrator must, when the sale is made upon credit, take the notes of the purchaser for the purchase money, with a mortgage on the property to secure their payment, with additional security if the court deems it necessary to secure the prompt payment of the amount so deferred and the interest thereon.

"When the sale is to be made by written bond, contract, lease with option to purchase, option to purchase, or title retaining contract, then at the hearing upon the return of sale and upon confirmation thereof, the executor or administrator must be authorized to make such sale by such written bond, contract, lease with option to purchase, option to purchase, or title retaining contract, as the case may be, and when necessary, authorized to execute proper conveyances and to escrow all conveyances and instruments affecting the sale, in a suitable depository approved by the court."

This section contains no limitation on the period of time through which deferred payments may be extended. The repeal by the legislature of § 15–1835 of the guardianship code indicates an intentional removal of the three year limitation previously governing guardianship sales. The terms of § 15–717 above quoted are broad enough to authorize the partial releases under the terms of the contract here in issue, and subsequent confirmation of partial releases is not required.

Appellant further urges that statutes authorizing sale of real estate of a ward are in derogation of the common law and must be strictly construed; and that section 15–1830, supra, so construed contemplates a sale for cash and does not au-

thorize the sale as made, allowing deferred payments on the purchase price. This section standing alone could be thus narrowly construed. But it does not stand alone and must be construed in pari materia with other sections defining the powers and duties of guardians. Idaho Code § 15–1832 provides:

"If the estate is sold for the purpose of putting out or investing the proceeds, the guardian must make the investment in accordance with the provisions of section 15–1836, and only upon prior approval of the probate court as therein provided."

Idaho Code § 15–1836 delimits the securities in which a guardian may invest the proceeds of sales. Subsection d. so far as applicable here provides:

"d. In the legally issued notes or bonds of the owner of improved encumbered real property in this state secured by first mortgage or deed of trust thereon; provided that the total debt secured by such encumbrance does not exceed fifty per cent (50%) of the reasonable cash value of such real property at the time of such investment, * * *."

■ If the $190,000 deferred balance of the purchase price be considered an investment of that part of the proceeds of the sale in the escrowed contract secured by the title to the land sold, the sale could not be confirmed under this statute, because the debt secured would exceed fifty per cent of the reasonable cash value of the property held as security. However, we do not find it necessary to determine the applicability of section 15–1836 in this case because of the provisions of the Prudent Man Investment Act. This act was enacted in 1949 subsequent in time to all of the statutes hereinabove considered. (Session Laws 1949, Ch. 36, p. 59) I.C. §§ 68–501 to 68–505. Insofar as there may be any irreconcilable conflict the later enactment controls. State v. Teninty, 70 Idaho 1, 212 P.2d 412 (1949); Little v. Nampa-Meridian Irrigation District, 82 Idaho 167, 350 P.2d 740 (1960).

■ The Prudent Man Investment Act was amended in 1963 to make it specifically applicable to banks acting as guardians, by the addition thereto of § 68–506 as follows:

"Notwithstanding the limitations and restrictions imposed upon guardians by section 15–1836, Idaho Code, as to the type and kind of investments that may legally be made by guardians, the term 'fiduciary,' as used in this act, and all of the provisions of this act, shall apply to and govern any bank, trust company, or individual authorized and duly appointed, by a court of competent jurisdiction, to act as a guardian under the laws of the state of Idaho."

The applicable provision of the act is as follows:

"68–502. Prudent man investment rule.—In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, a fiduciary is authorized to acquire and retain every kind of property, real, personal, or mixed, and every kind of investment, specifically including but not by way of limitation, bonds, debentures, and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire or retain for their own account. Within the limitations of the foregoing standard, a fiduciary may retain property properly acquired without limitation as to time, when under the circumstances then prevailing which men of prudence, discretion and intelligence would take into consideration in deciding to retain or to

932

dispose of such property, such retention is in the best interest of the trust."

This section broadens the authority of the guardian and the probate court to make and approve investments of the funds of the ward in "every kind of property, real, personal, or mixed, and every kind of investment," within the standard of prudence set out therein. We cannot say that the contract here considered does not come within that standard.

■ The trial court's finding that the evidence did not show that the sale of the property piecemeal would have produced a better result is assigned as error. The only evidence that sales in separate parcels would have resulted in a greater return to the estate, was given on the direct examination of appellant's expert appraiser Ashley. However, this witness on cross-examination testified that it was impossible to say whether sale of the land in one or in many parcels would bring more to the estate.

A motion for new trial was filed by the guardian of the person of the decedent ward. Thereafter, the motion was submitted by the administrator of the estate of the deceased ward, that administrator having been substituted as party for the guardian of the person of the ward. The court's order denying the motion is assigned as error. The issues raised by the motion for a new trial have been considered in this opinion and determined adversely to appellant.

This cause was tried in the district court on December 1 and 2, 1965. December 28, 1965, the district judge in a written memorandum advised counsel that he had reached a decision, that the bid of $240,000 was as great as the market value of the property sold, that the timber on the land was of little value, that the sale of the property should be confirmed, and requested counsel for the guardian to prepare findings of fact, conclusions of law and judgment accordingly. The next day, December 29, 1965, the ward died. December 30, 1965, the district judge who tried the cause executed findings of fact, conclusions of

law and judgment which were filed in the clerk's office January 3, 1966. Thereafter, motion for new trial was made by Margaret Wood, guardian of the person of the ward. The fact of the ward's death and the identification of Margaret Wood as a surviving child and one of the heirs of the deceased ward, was shown by affidavit.

Thereafter, James T. Knudson, previously attorney for Margaret Wood, appeared and showed that he had been appointed administrator of the estate of the deceased ward and moved the court that he be substituted for the respondent bank as guardian of the estate of the deceased ward. The motions raised the issue of the authority of the trial court to make findings and conclusions, and to enter judgment after the death of the ward. Idaho Code, § 10–1106 provides that:

"If a party die after a verdict or decision upon any issue of fact, and before judgment, the court may nevertheless render judgment thereon. * * *"

■ Under prior statutory procedure we have held that the findings and conclusions constitute the decision of the court in an action tried without a jury. I.C. §§ 10–302, 10–303; Roberts v. Roberts, 68 Idaho 535, 201 P.2d 91 (1948). That proposition has been modified by the rules of civil procedure adopted in 1958. IRCP Rule 52(a); I.C. § 1–215; Call v. Marler, 89 Idaho 120, 403 P.2d 588 (1965); Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887 (1961). The memorandum of December 28th contained part but not all of the formal findings entered on the 30th. It also contained the court's conclusions of law. It was sufficient to authorize the entry of judgment.

■ The motion to substitute the administrator as a party in place of the bank as guardian of the estate, was properly denied. The administrator had previously been acting as attorney for the guardian of the person and represented her in support of her objections to the confirmation

of the sale and, on appeal, in her effort to have the sale set aside. In such situation the substitution requested would tend to deny to the respondent bank the right to defend the sale which it, as guardian, had made. It would also impede or interfere with the performance of the duty of the guardian to wind up the affairs of the guardianship and render a final accounting. This it was authorized to do after the death of the ward. 39 C.J.S. Guardian & Ward § 41; Gordon v. Followell, Okl., 391 P.2d 242 (1964); State v. Frater, 18 Wash.2d 546, 140 P.2d 272 (1943).

■ Appellant assigned as error the overruling of objections to the cost bill. This assignment was not supported in brief or argument and therefore is not reviewed. Arnold v. Splendid Bakery, 88 Idaho 455, 401 P.2d 271 (1965).

Judgment affirmed. Costs to respondent.

SMITH and McQUADE, JJ., and NORRIS and MAYNARD, D.JJ., concur.