477 P.2d 503

**UPPER COLUMBIA MISSION SOCIETY OF SEVENTH DAY ADVENTISTS, Plaintiff-Respondent,**

**v.**

**KOOTENAI COUNTY, by and through its Board of Commissioners, a political subdivision of the State of Idaho, Defendant-Appellant.**

**No. 10028.**

Supreme Court of Idaho.

Nov. 16, 1970.

Rehearing Denied Dec. 15, 1970.

Robert M. Robson, Atty. Gen., Thomas C. Frost and Walter H. Bithel, Asst. Attys. Gen., Boise, Gary M. Haman, Pros. Atty., Kootenai County, Coeur d'Alene, for defendant-appellant.

R. B. Kading, Jr., Eberle & Berlin, Boise, for plaintiff-respondent.

SPEAR, Justice.

This is an appeal by Kootenai County from a district court judgment granting a tax exemption to property owned by the respondent, a religious corporation, and used primarily as a summer church camp for training children in handicraft, water skiing, boating and water safety.

The pertinent facts of those stipulated by the parties are as follows: The Upper Columbia Mission Society of Seventh Day Adventists, plaintiff-respondent herein, is a Washington corporation, incorporated in the State of Washington on February 24, 1898, and authorized to do business in the State of Idaho since 1949. The articles of incorporation provide that:

> "The objects of said corporation shall be the organization, establishment and maintenance of mission and church societies to teach, spread and promulgate the Christian religion and morality in accordance with the teachings of the Seventh-Day Adventists: and to erect and assist in erecting church edifices for such societies when established: and to build and assist in building structures for educational, charitable and benevolent purposes throughout eastern Oregon, Washington, Idaho and British Columbia and to said end to own, hold, mortgage, sell and convey property of every kind and description, and to do all other things incidental to the accomplishments of the aforesaid purposes."

The respondent corporation owns two lots of real property located at Hayden Lake in Kootenai County. Situated on the property are 18 to 20 buildings consisting of sleeping quarters, dining facilities and other buildings. The property is primarily used as a summer encampment for children who receive training in handicraft, water skiing, boating and water safety, through formal classes. They also receive religious training. During the hours when classes are not held, the facilities are available for swimming and boating. A registration fee of $19.00 is charged for each of the campers attending the camp, and the program is available not only to members of the Seventh Day Adventists religion, but also to any other children who desire to register for the camp. However, all campers are required to attend the religion classes. The camp has never been operated at a profit and in 1963 the net loss for the encampment was $7,795.58. During the days in the summer when the camp does not have organized operations, the facilities are open to ministers and church teachers who meet for educational classes and to take advantage of the camp's recreational facilities.

In 1963 the Kootenai County Assessor placed the two lots on the tax rolls and sent respondent a statement for 1963 real property taxes in the amount of $890.74. Two open air chapels and the acre of ground upon which they were situated were exempted from the rolls for taxation purposes. The respondent paid the taxes under protest and appealed the assessor's action. The County Commissioners of Kootenai County, sitting as a Board of Equalization, denied the protest and appeal. Respondent then appealed to the State Tax Commission which, after hearing on the case, affirmed the Board's holding. From that decision, respondent appealed to the district court.

The district court held that the property in question was tax exempt under I.C. § 63–105B as being property owned by a religious corporation used for religious purposes; that the property was tax exempt under I.C. § 63–105L as being owned and used for educational purposes from which no profit is derived; and that the property was tax exempt under I.C. § 63–105C as being property owned by a charitable corporation used exclusively for the purposes for which such corporation was organized. The court further held that the fact that the property is exempt from taxation pursuant to two or more provisions of the Idaho Code, does not require the legal conclusion that such property loses its exempt status, despite the use of the word

882

"exclusive" by the legislature in enacting each of the separate statutory sections.

This court is of the opinion the trial court's ruling is incorrect and the judgment entered therein must be reversed.

In granting the tax exemption, the trial court determined that respondent's property was exempt under each of three separate statutory exemptions, I.C. §§ 63–105B, 63–105C and 63–105L. To determine the correctness of the court's action in granting the exemptions, we must examine the facts and apply to them the requirements contained in each section of the exemption statute. It is well established that where the cause is heard in the trial court on stipulated facts and documentary evidence and no oral testimony is taken, so that the Supreme Court has before it all the showing that was considered by the trial court that heard and passed upon the question, then the Supreme Court is in as favorable a position to consider the matter as was the trial court and will examine and be governed by the facts disclosed, and exercise its own discretion as if the case were being presented to this court for determination in the first instance. Crumley v. Minden, 80 Idaho 391, 331 P.2d 275 (1958); Johnson v. Noland, 78 Idaho 642, 308 P.2d 588 (1957); Pharris v. State, 91 Idaho 456, 424 P.2d 390 (1967).

The use of the property for which an exemption is sought is clearly set out in the stipulation of facts signed by both parties. The stipulation states: "The property is primarily used as a summer encampment for children and the children are trained in handicraft, water skiing, boating, water safety, through formal classes. During the hours when formal classes are not conducted, facilities are available for swimming and boating. Classes are also conducted in religious training."

As so used, the property does not qualify for a tax exemption under I.C. § 63–105B.[1] The property is used primarily as a recreational summer camp for children, and as such, does not constitute "property * * * used *exclusively* for and in connection with public worship." (emphasis added) Statutes granting tax exemptions exist only as a matter of legislative grace, and by statutory mandate must be strictly construed. I.C. § 63–101; Sunset Memorial Gardens v. Idaho State Tax Commission, 80 Idaho 206, 327 P.2d 776 (1958). As this court stated in Malad Second Ward of the Church v. State Tax Commission, 75 Idaho 162, 269 P.2d 1077 (1954):

"Churches and other religious institutions, fraternal, benevolent or charitable corporations or societies enjoy no inherent right to exemption from taxation; and their property is taxable except insofar as it is specifically exempt by constitutional provision or statutory enactment. There is no presumption or implied exemption from taxation in their favor; and all property within the State is liable to taxation unless expressly exempt. Where an exemption is claimed, the property to be exempt must be clearly defined and founded upon plain language, without doubt or ambiguity, and must come within the plain wording of the statute.

"A statute granting tax exemption to certain institutions under prescribed conditions is to be strictly construed and cannot be extended by judicial construction so as to create an exemption not specifically authorized.

"In Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 697, 62 A.L.R. 323, this Court held:

"'Exemptions are never presumed. The burden is on a claimant to establish

1. "63–105B. *Property exempt from taxation—Religious corporations or societies.*—The following property is exempt from taxation: Property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such, and any recreational hall belonging to and used in connection with the activities of such corporation or society."

clearly a right to exemption. An alleged grant of exemption will be strictly construed. It must be in terms so specific and certain as to leave no room for doubt.'

"Other authorities to the same effect are: Salisbury v. Lane, 7 Idaho 370, 63 P. 383; Cheney v. Minidoka County, 26 Idaho 471, 144 P. 343; Kootenai County v. Seven-Seven Co., 32 Idaho 301, 182 P. 529; Andrews v. North Side Canal Co., 52 Idaho 117, 12 P.2d 263; State v. Union Congregational Church, 173 Minn. 40, 216 N.W. 326; Cooley on Taxation, 4th Ed., p. 1403, Sec. 672; 61 C.J. 392, Sec. 396; 84 C.J.S., Taxation, § 227; 51 Am.Jur. 526, Sec. 524." 75 Idaho 165, 166, 169 P.2d 1079.

See Herndon v. West, 87 Idaho 335, 393 P.2d 35 (1964).

 Thus, unless we are to overrule or depart from these precedents, I.C. § 63–105B must be construed strictly. The statute provides primarily for the exemption of property "used exclusively for and in connection with public worship." The assessor fully complied with this provision by exempting the two open air chapels and the acre of ground upon which they were situate. To this primary exemption there have been only two extensions granted by the legislature, i. e., (1) "any parsonage * * * occupied as such" and (2) "any recreational hall belonging to and used in connection with the activities of such corporation or society." Neither types of buildings are involved herein. Furthermore, had the legislature intended the exemption of summer recreational church camps, it could have, and still can, so provide just as it did for recreational halls. Such extensions should come, however, from action by the legislature and not by judicial fiat. Malad Second Ward, etc. v. State Tax Comm., supra.

As to I.C. § 63–105L[2] and again applying the Idaho rule of strict construction, although we do not think that formal classes in handicraft, water skiing, boating, and water safety nor the daily religious classes satisfy the educational purpose requirement of the statute, we need not and do not decide this issue. It is apparent from the stipulation of facts that the property is not *used exclusively* for educational purposes as is required by the statute. The property is used for recreational purposes both by children and adults, and therefore, the property in question fails to qualify for a tax exemption under this statute.

Again applying the strict construction rule to I.C. § 63–105C,[3] under which the lower court also found the property ex-

2. "63–105L. *Property exempt from taxation—Property used for school or educational purposes.*—The following property is exempt from taxation: All property used exclusively by the owner for (for) school or educational purposes, from which no profit is derived, and all property from which no profit or rental is derived and which is held or used exclusively for endowment, building or maintenance purposes of schools or educational institutions."

3. "63–105C. *Property exempt from taxation—Fraternal, benevolent, or charitable corporation or societies.*—The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veterans organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; provided, that if any building or property belonging to any such corporation or society is leased by such owner or if such corporation or society uses such property for business purposes from which a revenue is derived, then the same shall be assessed and taxed as any other property, and if any such property is leased in part or used in part by such corporation or society for commercial purposes the assessor shall determine the value of the entire building and assess such proportionate part of such building including the value of the real estate as is so leased or used for commercial purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise."

empt, there is nothing in the record that indicates that the respondent corporation is a fraternal, benevolent, or charitable corporation, despite the language in respondent's Articles of Incorporation which reads: "and to build and assist in building structures for educational, charitable and benevolent purposes." Moreover, even if we assume that the respondent qualifies as such a corporation, there is no evidence in the record that the property is *exclusively used* for the purposes for which the corporation or society was organized.

The lower court concluded that the recreational aspects of the camp are specifically authorized by the articles of incorporation by the catch-all phrase at the end of the "objects" paragraph, i. e., "to do all other things incidental to the accomplishment of the aforesaid purposes." Bearing in mind that the primary use of the property, under the stipulation, was "as a summer encampment for children * * *" where the children would receive training in handicraft, water skiing, boating, and water safety, as well as religious training, the foregoing conclusion is erroneous. Thus, the property also fails to qualify for a tax exemption under I.C. § 63–105C.

This decision makes unnecessary any disposition of appellant's other assignments of error.

Judgment of the district court reversed, and the cause remanded for the trial court to enter judgment for the 1963 taxes in the amount of $890.74 plus interest. Costs to appellant.

McFADDEN, C. J., and WARD, District Judge, concur.

McQUADE, Justice (dissenting).

The holding of the majority that the respondent is not entitled to a tax exemption for the property in question compels me to dissent.

The majority is caught up in the litany of the law pertaining to the scope of tax exemptions. That such exemptions are to be strictly construed, and that there is no presumption or implied exemption from taxation in favor of religious or charitable organizations is not disputed.[1] But the majority in this case, in the name of strict construction, squeezes the policy from the law, applying only the narrow words of the statutory exemptions.

The clear policy supporting the exemptions here involved is that the activities of non-profit religious and charitable organizations work for the public betterment and therefore should be encouraged by tax exemptions. So that these exemptions will not be available to those who would use them to protect endeavors of a commercial nature, the legislature attempted to more precisely define the types of activities and organizations to which the exemptions were applicable. One category is set out by I.C. § 63–105B:

"The following property is exempt from taxation: Property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such, and any recreational hall belonging to and used in connection with the activities of such corporation or society."

The majority seizes upon the fact that the "property * * * [is not] used *exclusively* for and in connection with public worship." (Emphasis theirs). They also note that § 63–105B does not specify church camps as such will be exempted, as it does recreational halls. The conclusion is that the exemption provided by § 63–105B is not available to respondents.

This is an elevation of form over substance. Section 63–105B is an attempt by the legislature to exempt church property used in worship, or other religious

1. I.C. § 63–101; Sunset Memorial Gardens v. Idaho State Tax Com'n, 80 Idaho 206, 327 P.2d 766 (1958); Malad Second Ward of the Church y. State Tax Com'n, 75 Idaho 162, 269 P.2d 1077 (1954); 84 C.J.S. Taxation § 227 (1954).

oriented activities, and to avoid exempting commercial enterprises owned or operated by churches. Recreational halls serve precisely the same function as the church camp. Neither is specifically a part of the worship service. Each attempts to foster the tenet of the church by provision of recreational activities in conjunction with other church activities. Surely the majority would not conclude that an outdoor basketball court on the church grounds provided for the recreational use of the church's youth would not be exempt because there were no walls or roof, and thus, it was not a "recreational hall." Nor do I think they intend, as their opinion seems to imply, that the recreational hall exemption is only available if such hall is used "exclusively for and in connection with public worship." Indeed then it would not be a "recreational" hall at all.

The church camp was used as a recreational center in conjunction with religious instruction which was mandatory for all children attending the camp, according to the stipulated facts. Further, the camp was used by ministers and church teachers for educational classes, these individuals taking advantage of the recreational facilities during non-class hours, when the camp was not being used by children. The camp had never been run at a profit. It is precisely this kind of non-profit activity by a religious society aimed at regenerating the spirit of the individual, which qualifies property under § 63–105B as tax exempt. Therefore, I must conclude that the camp was within the exemption of § 63–105B.

Because of the inherently overlapping nature of the exemptions involved here, this property also qualifies under §§ 63–105L and 63–105C. Section 63–105L provides:

"The following property is exempt from taxation: All property used exclusively by the owner for (for) school or educational purposes, from which no profit is derived, and· all property from which no profit or rental is derived and which is held or used exclusively for endowment, building or maintenance purposes of schools or educational institutions."

The majority finds this exemption is not available since the property was used for recreational purposes, rather than exclusively for educational purposes. Again, in the guise of strict construction, the majority narrows the scope of the exemption beyond the legislative intent.

The main use of the camp was for religious instruction and provision of *formal* classes in handicraft, water skiing, boating and water safety. These latter subjects differ little from those taught in physical education classes in Idaho's schools. Such classes have long been accepted as a necessary part of the full development of the child.

The fact that the camp facilities are used for recreational purposes when not in use for classes should not be determinative of the property's qualification for tax exemption. Use of school facilities like gymnasiums, swimming pools and playing fields after school hours is common. Such uses do not denigrate the school as a school, whether it be public or private. After class availability should be encouraged to maximize the benefit derivable from these facilities. Denying tax exemption because the property is used for recreational purposes during non-class hours must have the opposite effect. The legislature could not have intended this result. Rather, as with the exemption provided by § 63–105B, the intent was to avoid granting tax exemptions to commercial institutions who sought the cover of this section for their profit oriented activities. Use of the facilities, after classes, for recreational purposes, is not the kind of use by which the legislature intended to bar property from exemption when § 63–105L was made to turn on "exclusive" use for school or educational purposes. Such recreational uses are consistent with exclusive use for

school, or educational purposes, as required by § 63–105L.

As for § 63–105C, it provides:

"The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; provided, that if any building or property belonging to any such corporation or society is leased by such owner or if such corporation or society uses such property for business purposes from which a revenue is derived, then the same shall be assessed and taxed as any other property, and if any such property is leased in part or used in part by such corporation or society for commercial purposes the assessor shall determine the value of the entire building and assess such proportionate part of such building including the value of the real estate as is so leased or used for commercial purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise."

The majority concludes there is nothing in the record to indicate that respondent corporation is a fraternal, benevolent or charitable corporation, nor is there evidence in the record that the property is exclusively used for purposes for which the corporation is organized. This conclusion leads the majority to deny respondent an exemption under § 63–105C. This conclusion, however, is not supported by the facts before this Court. This Court must determine whether respondent corporation comes within the terms of § 63–105C from the charter instrument of respondent before this Court as a part of the record.

Churches have been held to be charitable corporations, the distinctive features of a charitable corporation being that it has no capital stock and no provision for making profits, but derives its funds mainly from public and private charity, holding them in trust to be expended for charitable and benevolent purposes.[2] It is clear from the respondent's Articles of Incorporation that respondent qualifies as a charitable corporation under this test. Having qualified, the question remains as to whether the record shows the property involved is used exclusively for the purposes for which the corporation was organized, as § 63–105C requires.

The Articles of Incorporation state in part:

"The object of said corporation shall be the organization, establishment and maintenance of mission and church societies to teach, spread and promulgate the christian [sic] religion and morality in accordance with the teachings of the Seventh Day Adventists; and to erect and assist in erecting church edifices for such societies when established; and to build and assist in building structures for educational charitable and benevolent purposes throughout eastern Oregon, Washington, Idaho and British Columbia and to said end to own, hold, mortgage, sell and convey property of every kind and description and to do all other things incidental to the accomplishment of the aforesaid purposes."

The "objects" clause of the corporation thus states the purposes generally to establish mission and church societies to spread the teachings of the Seventh Day Adventists, to build structures for *education, charitable and benevolent purposes,* and to do other things incidental to the accomplishment of these purposes. This camp clearly involved spreading the teachings of the Seventh Day Adventists, since all children attending camp were required to attend religious instruction classes. The other classes were very similar to those one might encounter in a Y.M.C.A. Such

---

**2.** In re Coleman's Estate, 66 Idaho 567, 571–572, 163 P.2d 847 (1945).

classes, whose object is to promote growth in Christian character and service through physical, social and spiritual training, have been held to have charitable or benevolent objects.[3] When such activities as were conducted at this camp are interwoven with instruction in religion, and are conducted for no profit, it is clear that benevolent and charitable purposes are being served, as is the object of respondent as set out in its charter. It is settled law that while a corporation cannot engage in a business the charter does not authorize, it may engage in any business or transaction which is fairly and reasonably incidental to the carrying on of its principal business.[4] Under this rule of construction of the limits of an "objects" clause, the activities of respondent at the camp are within the objects set out by the Articles. The respondent is thus entitled to an exemption under § 63–105C.

The qualification of this property for a tax exemption is clearest when §§ 63–105B, C, and L are read together. The key to the scope of these sections is an understanding of the purpose of the legislature in enacting them. The legislature, as previously noted, intended that the socially beneficial works carried on by religious organizations, by charitable or benevolent organizations, and by those promoting education be encouraged by exempting the properties employed in these endeavors from taxation. On the other hand, these categories are not to be available as tax shields for profit oriented activities. This intent is emphasized by use of the word "exclusive" in these sections—use partial-

ly for religious, educational or charitable purposes as outlined in the statutory sections, and partially for other (commercial) purposes disqualifies the property from these exemptions. A building used for worship services on the day of worship set aside by a particular denomination, and as a classroom for five other days during the week, would not be used *exclusively* for worship or for educational purposes. By the reasoning of the majority, then, no tax exemption would be available. This result is certainly not in keeping with the legislative intent of §§ 63–105B and 63–105L. The legislature found sufficient public benefit in either use to exempt the property from taxation. Use for both cannot be said to negate the public benefit derived; on the contrary, the public benefit in this situation is increased. The legislature intended that property in such a situation be tax exempt. That is precisely and unavoidably the case at hand. The property was used for religious instruction and worship, for recreation in connection with the activities of this religious corporation, and for non-religious educational purposes. Thus, even if the property did not qualify as being used exclusively for activities enumerated in §§ 63–105B or 63–105L, there can be no doubt that these uses together qualify the property for a statutory tax exemption.

For these reasons, the judgment of the district court should be affirmed.

DONALDSON, J., concurs in the dissent.

3. Leeds v. Harrison, 7 N.J.Super. 558, 72 A.2d 371 (1950); Carpenter v. Young Men's Christian Ass'n, 324 Mass. 365, 86 N.E.2d 634 (1949).

4. 19 C.J.S. Corporations § 949 (1940).