496 P.2d 105 (1972)
94 Idaho 644
NORTH IDAHO JURISDICTION OF EPISCOPAL CHURCHES, INC., Plaintiff-Respondent,
v.
KOOTENAI COUNTY, by and through its Board of Commissioners, a Political Subdivision of the State of Idaho, Defendant-Appellant.
No. 10466.
Supreme Court of Idaho.
April 24, 1972.
Rehearing Denied May 8, 1972.
*106 Gary M. Haman, Pros. Atty., Coeur d'Alene, for appellant.
Paul D. McCabe, Coeur d'Alene, for respondent.
SHEPARD, Justice.
This is an appeal from a judgment granting an exemption from ad valorem taxes sought to be assessed on property owned by a religious corporation. We affirm the judgment.
Plaintiff-respondent is a non-profit religious corporation organized in Idaho in 1954. It owns approximately 105 acres of contiguous real property located on the shores of Coeur d'Alene Lake in Kootenai County. A part of the total ownership is described as Government Lot 5, Section 26, *107 Township 49 North, Range 4 West, BM, which consists of approximately eleven and one-half acres. The Kootenai County assessor assessed the entire property, exempting therefrom only approximately .10 acres of said Lot 5 upon which was located an outdoor chapel. Plaintiff-respondent appealed that assessment to the County Board of Equalization, and, upon an adverse ruling, thereafter appealed to the State Tax Commission. The Tax Commission affirmed the assessment of the County Board of Equalization and the plaintiff-respondent brought this action in the district court.
In the district court it was stipulated by the parties that the record of the hearing before the State Tax Commission should be submitted to the court and considered as the facts in the case without the need for any further evidence. It was further stipulated that the trial court might "follow" the decision which at that time had been rendered by the district court in the case of the Upper Columbia Mission Society of Seventh Day Adventists v. Kootenai County. Upper Columbia presented similar facts to the case at bar. The district court in the case at bar entered its memorandum decision, which the parties stipulated could be considered as the findings of fact and conclusions of law, and judgment was entered thereon. Following judgment in the instant case, the judgment in Upper Columbia was reversed in the Supreme Court. 93 Idaho 880, 477 P.2d 503 (1970). From that judgment in favor of the plaintiff, Kootenai County appeals.
The judgment of the district court exempted only that portion of the plaintiff's property contained in Government Lot 5. On that exempted property were located approximately 60 buildings, which consisted of sleeping quarters, dining facilities and an outdoor amphitheater which was used as a chapel. The entire property of the plaintiff is operated as a summer church camp. In that respect the facts of this case are similar to Upper Columbia.
The trial court herein found, and its findings are supported by the record, that the land in question is used for summer camp purposes. Religious services are held at the camp and a portion of the summer camp schedule is devoted to classroom work and religious teaching. Regular classes of instruction in the teachings and doctrines of the Episcopal Church are conducted and during the time when such form of classes are not in progress, supervised pursuits in boating, swimming and other outdoor activities take place. The testimony reveals that a deliberate attempt is made to use the recreational activities to exemplify and put into specific action the Christian teachings of the classroom.
The State Tax Commission determined that the plaintiff did not use its property exclusively for, and in connection with, public worship since it held that operation of recreational facilities, although closely tied to religious training, did not qualify as an exemption under I.C. § 63-105B.[1] The trial court, as aforesaid, disagreed and reversed that determination of the State Tax Commission, holding that 63-105B should be construed to exempt that portion of the plaintiff's property contained in Lot 5.
Following the decision of the trial court herein, this court issued its decision in Upper Columbia, which is squarely in conflict with the district court's decision in the instant case.
It is necessary therefore, to re-examine the decision in Upper Columbia, which is markedly similar to the instant case and *108 would be controlling herein unless overruled or modified.
Idaho is committed to the rule that:
"[a] statute granting tax exemption to certain institutions under prescribed conditions is to be strictly construed and cannot be extended by judicial construction so as to create an exemption not specifically authorized."
Malad Second Ward of the Church etc. v. State Tax Commission, 75 Idaho 162, 165, 269 P.2d 1077 (1954). While we reaffirm that rule herein, such must be merely the beginning point from which we determine whether the term "exclusive" should be as narrowly construed as did the majority opinion in Upper Columbia.
We note initially that Upper Columbia was a decision of a closely split court. Upper Columbia considered and rejected the applicability of exemptions contained in I.C. § 63-105B, § 63-105C,[2] and § 63-105L.[3] As pointed out by the dissent, the majority opinion in Upper Columbia focused on a very narrow portion of the three statutory exemptions. The majority opinion held that since the word "exclusive" was used in each subdivision of the exemption statute, the uses must be mutually exclusive and that any combination of exempted uses disqualified the property for tax exemption.
Although the action herein was decided by the trial court on the basis of I.C. § 63-105B, the parties stipulated that the decision could be rendered in accordance with the holding of the trial court in its decision in Upper Columbia. The decision in Upper Columbia involved consideration of all three exemption subdivisions and therefore we are required to utilize those exemptions considered by the court in Upper Columbia in our decision herein.
There is an elementary axiom of statutory construction that statutes must be construed in pari materia. Christensen v. West, 92 Idaho 87, 437 P.2d 359 (1968); Knudson v. Bank of Idaho, 91 Idaho 923, 435 P.2d 348 (1967). We therefore consider the legislative intent which emerges from consideration of I.C. §§ 63-105B, 105C and 105L.
It is clear that the legislature intended the enactment of the statutes in question to exempt from taxation those types of organizations engaged in religious, *109 charitable or educational activities. The rationale therefor may very well have been based on our constitutional provisions which urge the legislature to encourage and promote sobriety, morality and virtue in the people of this state. Art. 3, § 24, Constitution of the State of Idaho. All of the three exempt activities clearly fall within the purview of such constitutional encouragement.
We note also that the legislature has seen fit to encourage religious, charitable and educational activities when conducted without a profit motive, since it allows contributions to such organizations to be deducted from income otherwise taxable by the State of Idaho. I.C. §§ 63-3002, 3022; 26 U.S.C.A. (I.R.C. 1954) § 170.
As stated in Buffalo Turn Verein v. Reuling, 155 Misc. 797, 281 N.Y.S. 545, 546 (1935), a case in which a tax exemption was granted:
"We must, as in all other judicial determinations, place in juxtaposition the two extremes of judicial interpretation. On the one hand is the policy of strict construction which frowns upon tax exemptions. [citations]. On the other hand, innocent collateral activities essential to the furtherance of the true purposes of the corporation should not blind the court to the genuineness of those purposes nor to the sincerity of their actual accomplishment. [citations]
"The present depression calls, on the one hand, for a more strict limitation of tax exemptions in the contemplation of the present excessive burdens of the taxpayers. On the other hand, we must strive to maintain intact those religious, charitable, educational, and fraternal institutions which have been essential and integral parts not only of the foundation but in the maintenance of the form of government and type of society in which we live."
The majority opinion in Upper Columbia holds in effect that any of the three exempted activities must be mutually exclusive, each from the other. No rationale therefor is laid down by the court in Upper Columbia. We can see no overriding purpose to be served by such mutually exclusive ruling by that court.
A strict application of the doctrine announced in Upper Columbia would result in situations which we perceive were clearly not intended by the legislature. For example, we note that almost every religious denomination conducts what are known as Sunday Schools for the religious education of the children of its members. Such Sunday Schools are regularly conducted in the church buildings. Under the strict holding of Upper Columbia, since such building would be thereby used not "exclusively" for religious services but rather a blend of religion and educational purposes, the church building would then not be qualified for a tax exemption under 63-105B. Likewise, we note that many churches in our state have as an adjunct thereto a hall which at times is used for athletic events, groups of church members organized for charitable pursuits, scout meetings, dances, pageants and like events. Under such a strict construction of Upper Columbia as the majority opinion therein urges, said activities would be deemed to be mutually exclusive each of the other and the charitable and recreational usage would disqualify that building from being exempted under the provisions of 63-105B. Likewise, the religious and educational utilization of the building would prohibit a tax exemption on the basis of "recreational hall," or under 63-105C setting forth the educational exemption.
Likewise do we view the utilization of the respondent's property both here and in Upper Columbia. Although the property was admittedly used in both cases for recreational activities, those activities were closely tied with religious aspects and the purposes of the church. In both situations educational activities were carried on which again were related directly to the doctrines *110 and teachings of the particular church group involved.
While cases from other jurisdictions squarely in point are somewhat rare, the case of Flathead Lake Methodist Camp v. Webb, 144 Mont. 565, 399 P.2d 90 (Mont. 1965) is highly persuasive. The Montana Court also had for consideration an asserted tax exemption for a church summer camp. The Montana statute also granted exemptions for properties as might be used "exclusively" for actual religious worship, for educational purposes or other purposes. In describing the camp activities, the Court said:
"The camp caters principally to children on an organized, two-week basis. They are segregated by age throughout the summer, each two-week camp having approximately 150 children in attendance. The area served is somewhat larger than a circle encompassing western Montana. The activities range from instruction, praying, meditation, and nature walks to secular recreation such as archery, swimming, and crafts. Each day is organized to provide a balanced program of arts and crafts, physical activity, religious instruction, rest, chores, and prayers." 399 P.2d 90, 92.
The Court said:
"The only reason for struggling with a characterization is the presence of the words `exclusive use' in the statute. * *
"One cannot escape the obvious fact that the camp here does not have a definite religious, educational, and charitable nature about it. So much so that it is very difficult to point to one of the categories as the primary or inherent use of the premises. However, we think it clear, and do hold, if such a holding be necessary, that the exclusive use of the camp is more directly educational than anything else. * * *
"But the clear purpose and achievement of the camp is to teach children how to relax, how to be better citizens, how to assert a Christian influence on their home communities, how to appreciate God and morality through closeness to nature, and how to grow to maturity. Qualities of character and a good sense of moral values must be learned. * * * This camp is calculated, designed, and programmed to lead the children through a two-week course in the practice of a moral and Christian life. * * *
"In conclusion, it is not proper to segregate this land and exempt only a part of it. Even without relying on the religious and charitable character of the property, the whole of the land is exempt as land used for `educational purposes.' The presence of religious and charitable overtones only strengthens our decision." 399 P.2d 90, 94-95.
In Church Divinity School v. County of Alameda, 152 Cal. App.2d 496, 314 P.2d 209 (Cal. App. 1957) a tax exemption was sought for property which it was contended, was used "exclusively" for the purposes of education. The Court, citing Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal.2d 729, 221 P.2d 31 (Cal. 1950), rejected the contention that "exclusive" required the property to be indispensable to the educational purpose. The Court stated:
"`Perhaps it may not be said that such recreational facility, in its use by either patients or essential personnel, is indispensable to the accomplishment of hospital purposes, but absolute indispensability does not commend itself as an appropriate test, and it finds no support in the authorities.'" 314 P.2d 209, 213; 221 P.2d 31, 41.
In Serra Retreat v. Los Angeles County, 35 Cal.2d 755, 221 P.2d 59 (Cal. 1950), the Court exempted a "retreat" house from taxation, stating:
"To this point it would appear that the exemption of property `used exclusively for religious * * * or charitable purposes' should be held to include any property *111 of the religious or charitable entity which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of religious or charitable purposes. The integrated activities as a whole must be examined in determining the tax status of property for the welfare exemption." 221 P.2d 59, 61.
In Silver Bay Ass'n For Christian C. & T. v. Braisted, Sup., 80 N.Y.S.2d 548 (1920), a former school and camp were held to be exempt from taxation by meeting the statutory requirement of "an exclusive" use.
The Court therein said:
"The statute should have a fair, reasonable construction, in a liberal sense, in harmony with the intent of the state, to encourage learning, charity and religious teaching." 80 N.Y.S.2d 548, 553.
See also: Green Acre Baha'i Institute v. Town of Eliot, 150 Me. 350, 110 A.2d 581 (1954); House of Rest of the Presbyterian Church in the United States v. County of Los Angeles, 151 Cal. App.2d 523, 312 P.2d 392 (1957); Multnomah School of the Bible v. Multnomah County, 218 Or. 19, 343 P.2d 893 (1959); Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826 (1945).
We take judicial notice of the fact that numerous religious denominations have acquired, over the years, real property on the shores of lakes throughout Idaho. Likewise, organizations such as the Boy and Girl Scouts, the YMCA and other like charitable and social betterment organizations have acquired real property and erected summer encampments. In almost every case, such summer camps have only been made possible through the generosity of donors. As in the case at bar and in Upper Columbia, such encampments are non-profit and in fact operated at substantial losses to the sponsoring organization. We take note that such encampments serve the young people of the State of Idaho and predominately those who otherwise would have no access to or could not afford to enjoy the beauties of nature and the benefits of living for a short time in an outdoor environment with the benefits of wholesome recreation and education in the virtues of good morals, etc. It is our belief that such non-profit activities on behalf of our youth should be encouraged and it is further our belief that the legislature in the enactment of the tax exemption statutes so intended that the activities of such organizations should be encouraged by way of tax exemptions. The decision in Upper Columbia is directly contrary to such philosophy. It is, in our opinion, an erroneous interpretation of legislative intent, cannot stand, and must be and hereby is reversed.
We therefore hold that the doctrine of tax exemption set forth in I.C. §§ 63-105B, 105C and 105L are not mutually exclusive. The real property utilized by religious organizations for summer encampments such as in the case at bar and in Upper Columbia should be exempt from ad valorem taxes, since all activities conducted thereon, although in some aspects charitable, and in some aspects educational, are nevertheless directly related to the religious purposes for which the groups are organized.
The judgment of the trial court is affirmed. Costs to respondent.
McQUADE, C.J., and DONALDSON, J., concur.
SPEAR, J., sat but retired prior to decision.
McFADDEN, Justice (dissenting).
The majority opinion in affirming the judgment of the trial court herein has relied upon the provisions of I.C. §§ 63-105B, C and L as the basis for granting the exemption from taxation of Lot 5, Section 26, Township 49 North, Range 4, West B M, in Kootenai County. Encompassed in that 11.5 acre tract are some sixty buildings. *112 Initially the county assessor had granted an exemption from taxation on approximately .10 acres of Lot 5 on the basis that the portion exempted covered an outdoor chapel situated thereon, which chapel was used exclusively for public worship, qualifying it for an exemption under I.C. § 63-105B.
This assessment was appealed to the board of county commissioners sitting as a board of equalization, and after an adverse ruling by the board of equalization the respondent appealed to the state tax commission, which affirmed the ruling of the county board of equalization. The respondent then appealed to the district court which reversed the decision of the state tax commission and ordered judgment be entered granting an exemption to the whole of Lot 5 with the sixty buildings situate thereon. The rationale of this decision was that the whole of Lot 5 was exempt from taxation by reason of the provisions of I.C. § 63-105B.
As far as the record discloses the sole basis for the respondent's claim of exemption before the tax assessor, the county board of equalization, the state tax commission, the district court and on appeal to this Court was the exemption provided by I.C. § 63-105B. The district court explicitly recognized that this section of the statute, and not I.C. §§ 63-105C and 63-105L was the basis for the exemption, unlike the case of Upper Columbia Mission Society v. Kootenai County, 93 Idaho 880, 477 P.2d 503 (1970), where all three paragraphs of the exemption statute were involved (I.C. § 63-105B, C and L). Nor did either of the parties to this appeal contend other than the sole basis for the exemption was to be found in I.C. § 63-105B.
However, the majority opinion disregards the fact that a narrow issue was presented to this Court as well as to the state tax commission and the district court. The majority opinion, then, in effect, utilizing the provisions of not only I.C. § 63-105B, but also § 63-105C and § 63-105L, overrules Upper Columbia Mission Society v. Kootenai County, supra, and holds that the 11.5 acres are exempt, thus affirming the district court.
I.C. § 63-105B provides an exemption for
"property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such, and any recreational hall belonging to and used in connection with the activities of such corporation or society." (Emphasis added.)[1]
It is my conclusion that the state tax commission correctly determined that:
"Section 63-105B, Idaho Code, provides that property used exclusively for and in connection with public worship, is exempt from taxation. Although religious services and religious classes are conducted at camp, this cannot be said to be the primary purpose of the camp and consequently the property is not used exclusively for, and in connection with, public worship. * * *."
The district court itself found that: "A majority of the summer camp schedule is devoted to recreational activities under the supervision of camp directors." It is my conclusion that the district court in this finding made imperative the strict application *113 of I.C. § 63-105B and that the majority opinion was in error when it found it necessary to employ (contrary to the basis of the respondent's application for exemption throughout these proceedings) the provisions of I.C. § 63-105C and § 63-105L.
Aside from Upper Columbia Mission Society v. Kootenai County, supra, the following cases all stand for the proposition that exemptions from taxation are never presumed and that the burden is on a claimant to establish clearly a right to exemption. Malad Second Ward of the Church, etc. v. State Tax Commission, 75 Idaho 162, 269 P.2d 1077 (1954); Bistline v. Bassett, 47 Idaho 66, 272 P. 696 (1928); Salisbury v. Lane, 7 Idaho 370, 63 P. 383 (1900); Cheney v. Minidoka County, 26 Idaho 471, 144 P. 343 (1914); Kootenai County v. Seven-Seven Co., 32 Idaho 301, 182 P. 529 (1919). As stated in Bistline v. Bassett, supra, 47 Idaho at 71, "[a]n alleged grant of exemption will be strictly construed. It must be in terms so specific and certain as to leave no room for doubt."
Under the facts in this case, it is my conclusion that the judgment of the district court should be reversed.
NOTES
[1] 63-105B. Property exempt from taxation  Religious corporations or societies.  The following property is exempt from taxation: Property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such, and any recreational hall belonging to and used in connection with the activities of such corporation or society.
[2] 63-105C. Property exempt from taxation  Fraternal, benevolent, or charitable corporations or societies.  The following property is exempt from taxation: Property belonging to any fraternal, benevolent, or charitable corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such corporation or society is organized; provided, that if any building or property belonging to any such corporation or society is leased by such owner or if such corporation or society uses such property for business purposes from which a revenue is derived which, in the case of a charitable organization, is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property, and if any such property is leased in part or used in part by such corporation or society for such purposes the assessor shall determine the value of the entire building and assess such proportionate part of such building including the value of the real estate as is so leased or used for such purposes, and shall assess all merchandise kept for sale, and the trade fixtures used in connection with the sale of such merchandise.
[3] 63-105L. Property exempt from taxation  Property used for school or educational purposes.  The following property is exempt from taxation: All property used exclusively by the owner for (for) school or educational purposes, from which no profit is derived, and all property from which no profit or rental is derived and which is held or used exclusively for endowment, building or maintenance purposes of schools or educational institutions.
[1] The legislature of the second regular session of the forty-first legislature enacted S.B. 1512, which amended I.C. § 63-105B by adding to its provisions the following language:

"and this exemption shall extend to property owned by any religious corporation or society which is used for any combination of religious worship, educational purposes and recreational activities, not designed for profit."
This bill was signed by the governor on March 17, 1972, and by its provisions became effective as of January 1, 1972.